STATE OF MONTANA, ex rel. SHERMAN ERNEST LESSLEY, Relator, v. DISTRICT COURT, GALLATIN COUNTY, et al., Respondents.

No. 9846.
Submitted September 24, 1957. Decided November 26, 1957.
318 Pac. (2d) 571.

358

Mr. H. A. Bolinger, Jr., and Mr. Douglas R. Drysdale, Bozeman, for relator.

Messrs. Morrow, Nash & Thompson, Bozeman, for respondents.

Mr. Bollinger, Mr. James H. Morrow, Jr., and Mr. Arthur F. Thompson argued orally.

MR. JUSTICE ANGSTMAN:

On application of Myrene Yvonne Mandeles for a writ of habeas corpus, the respondent court directed that the custody of Mickey Ray Lessley, Dennis Elwood Lessley and Jimmie Dean Lessley, three minor children of Sherman Ernest Lessley and Myrene Yvonne Lessley, now Myrene Yvonne Mandeles, be taken from Sherman Ernest Lessley and given to petitioner. Sherman Lessley thereupon instituted this proceeding for a writ to review the action of the respondent court and judge. This court issued an alternative writ and an order to show cause. The matter was heard after a transcript of the evidence adduced before the respondent court was furnished to this court.

The facts shown by the record are these:

Myrene Yvonne Mandeles was formerly married to Sherman Ernest Lessley and obtained a decree of divorce from him on September 11, 1953, in the district court of Salt Lake County, State of Utah. By this decree, Myrene Yvonne Lessley was awarded the custody of the three children of the marriage, being the three above-named children; that Sherman Ernest Lessley, the father, was ordered by the decree to contribute the sum of $100 per month for their support and maintenance. He failed to make these payments and proceedings were instituted in the district court of the eighteenth judicial district of the State of Montana to compel him to do so. By the order entered in those proceedings, dated October 1, 1954, he was ordered and directed to pay the sum of $60 per month as support money for the minor children.

He made the payments as thus ordered until December 6, 1954, when the last payment was made. Additionally the Welfare Department of the State of Utah was paying to Myrene

Yvonne Lessley the sum of $160 per month for the support of the children, but this amount was reduced by whatever amounts she received from Sherman Lessley.

On December 11, 1954, the mother of the children wrote Mr. Lessley the following letter:

"Dear Sherman,

"This is going to be very hard for me to do, but I'm going to ask you anyway.

"Would you like to have Mike & Dennis? I mean permanently. It would go through court & all the legall [sic] preceedings [sic] that would be necessary. As you know Mike has always been your boy. I thought that he had got over that, but since he seen you, both Dennis & Mike keep asking to go live with their Daddy.

"I really don't think that you want them for always, but the kids want you & for them I will ask you if you want them.

"I want them to be happy & evidently they are not as happy with me as they would be with you. You are in a better situation to take care of them than I am. They would, at least, have both a mother & a father if you took them. And you know as well as I do that boys need their real father & most of all a father. As you know, I'm not married & I have no plans of getting married. I guess I never will again. I don't think that I will ever find a person that will love me enough. But maybe you can see why I have finally decided to ask you if you want Mike & Dennis. The kids have never really accepted anyone that I have gone with & I guess that they never will as long as they don't have their real father. Boys are funny that way. Girls are a little different because they will accept things a lot easier than boys. It isn't that the boys don't like the guys that I have gone with, because they have, but they just don't like them to tell them what to do. They either ignore him or they tell him to shut up or no. So what do you do?

"Well, it's up to you & Ruth now. Mike & Dennis, I am sure, would be much happier if they had both a father & a mother. A father especially. Don't get me wrong, they have been happy

with me, but something has been taken out of their lives & that was very important to them.

"By the way when are you going to send the money for their snow suits? Think this over very carefully & let me know— one way or the other. If you decide to let them stay with me, then I will still try to do my best for them & to make them happy. If you want them, arrangements will be made for you to take them. It isn't easy for me to give them up but they seem to want you more than me. So if that's what they want & will be happy, then that's what I want for them. Write as soon as you can to let me know. Sincerely Myrene P. S. Think of the kids point of view as well as your own."

On December 17, 1954, she wrote a further letter directed to Sherman Lessley and his wife, Ruth, in which she stated: "Dear Sherman & Ruth,

"You wanted me to let you know when you could come & get the kids, so I decided to let you know, now that I have made up my mind for sure. You can come & get the kids around the 27th of December. Right after Xmas. By the way, do you want all of the kids? I have thought about keeping Jimmie, but I think that it would make Mike & Dennis feel that I didn't want them & that I only wanted Jimmie. Besides, I think that it would be more harm to seperate [sic] Dennis & Jimmie because they are so close to each other.

"Jimmie would get pretty lonesome all by himself. So I guess that it's best to let them all go together. Or have you changed your mind about taking the kids?

"*Everyone thinks that you will be giving me the kids back within six months. That's if you take them at all.* Which I doubt that you will do. Let me know if you are still going to take the kids & if you are, if you are going to come & get them around the 27th of December. The snow suit sizes that I had for the kids were 2, 4, 6. But you will have to judge for yourself the sizes, if you still intend on getting them for the kids.

"Let me know soon your decision, so that if you have decided

to take all of the kids that I can have everything ready for them to go. Sincerely, Myrene.''

Sherman Lessley thereupon after receipt of the letters went to Salt Lake City, Utah, on December 26, 1954, received the children from Myrene Yvonne Lessley and took them to his home near Bozeman, Montana. Ever since that time the children have lived with him and his present wife, Ruth Lessley. On December 28, 1954, being two days after the father had taken the children, Myrene Yvonne Lessley married Russell Mandeles who then had two children by a former marriage, and since her marriage to Mandeles she has given birth to another child. They now maintain their home in Kearns, Utah.

Sherman Lessley also, subsequent to the divorce in Utah, married another woman who had two children by her former marriage; she has since given birth to twins from the present marriage.

When the habeas corpus petition was filed in June, 1957, the children here involved were of the ages of 7, 6 and 5 years respectively.

After hearing, in the habeas corpus proceeding, the court made findings of fact and conclusions of law in favor of the mother and against the father. Exceptions to certain findings were made and overruled and judgment was entered in accordance therewith. In this proceeding the father contends that the court erred in making certain findings of fact and in reaching the conclusion which it did.

The father complains of the finding to the effect ''That respondent [the father] has never properly sought modification of the Utah decree and is bound thereby.''

It is our view that the court's judgment cannot be sustained on the strength of this finding. When the Utah court awarded custody of the children to the mother it was a judicial determination that as between herself and the father she should have the preference legal right to the exclusive custody, but this right was in the nature of a personal privilege which she might waive in favor of her divorced husband should she see fit to do

so. Sykes v. Speer, Tex. Civ. App., 112 S.W. 422, and see In re Foster's Estate, 47 Nev. 297, 220 Pac. 734. This she did by the letters of December 11 and 17. Furthermore the adjudication by the Utah court was made in the light of the facts as they existed at the time the decree was made. Cases are legion that a decree awarding custody of children is subject to modification upon a change of conditions, and where, as here the children have been rightfully brought into the State of Montana, and their domicile is rightfully in this state the courts of this state have a right to determine the question of custody. Application of Enke, 129 Mont. 353, 287 Pac. (2d) 19.

As above-noted both parties have married since the divorce ██ decree was rendered. For more than two years the mother has permitted the father and his present wife to have the children. These are substantial changes justifying the court in reexamining the question of custody, and what is for the best interest of the children with respect thereto. Compare Nichols v. Nichols, 239 Iowa 1173, 34 N.W. (2d) 187; Askew v. Askew, 212 Ga. 46, 90 S.E. (2d) 409; Heavrin v. Spicer, 49 App. D.C. 337, 265 F. 977, and see Annotation, 107 A.L.R. 642.

The mother's waiver of her right to the custody and her sur- ██ render of custody to the father would not be binding upon the court if that result were not for the best interests of the children.

Originally under our statute each of the parents had equal ██ right and custody to the children. R.C.M. 1947, section 61-105. When the decree of divorce was rendered and the custody granted to the mother she then had the preference right but as above-noted this right was one that she might waive either temporarily or permanently. When waived she gave up her preference right and the father may not now be deprived of the custody which she voluntarily surrendered unless he is an unfit person to have the custody, or unless it is shown that the best welfare of the children requires that they be taken from him.

The question then remains as to whether the judgment may

be sustained when based upon other findings of fact made by the court.

The father contends that the court acted arbitrarily and abused its discretion in making certain findings of fact, and that the only findings of fact that would support the conclusion of the court are not supported by the evidence.

The court found that the present home and care of the children is not fit and proper for prolonged periods of time. We have studied the record carefully and find no evidence upon which to base a finding that the children are not being properly cared for by the father and his present wife. True, there is evidence by the school teacher that the two children attending school are emotionally disturbed. This is something that naturally results when there is a separation of the parents. The children prefer to be with both of the parents. There is no proof that the emotional disturbance would be eliminated or lessened were the children taken from the father and given to the mother. There is no substantial evidence in the record to warrant the court in taking the custody from the father on the ground that he was not properly caring for the children.

Even the mother admitted in the letters that the children, particularly the two older ones, prefer to remain in the custody of the father and also admitted that it is not wise to separate the three children.

The court made a finding that respondent father neglected to make payments for the support of the children after December 1954. That finding is supported by the evidence, but the record shows that on December 11 the mother wrote the letter referred to above, and certainly the father was under no obligation to continue paying money to the mother for the support of the children if he were to accept the children and support them himself.

The court also found that when the mother allowed the father to take the children to Montana she was destitute and a ward of the Public Welfare Agency of Utah. The mother was then

receiving $160 per month from the Public Welfare Agency of Utah and thus was not entirely destitute.

The court found and the evidence offered by the mother shows that she, on more than one occasion, sought the return of the children to her, after they had been taken by the father to his home in Montana. This fact would not authorize the judgment of the court awarding permanent custody to the mother after she had voluntarily surrendered custody to the father and to his present wife.

This court in Haynes v. Fillner, 106 Mont. 59, 75 Pac. (2d) 802, 806, said: "It is well settled that where a natural parent has voluntarily relinquished his child to another and there has grown up a reciprocal affection between the foster parent and the child, the court may refuse to disturb those relations at the request of the parent if the best interests of the child so require." See also 67 C.J.S. Parent and Child, section 12e, page 663, and Wallick v. Vance, 76 Utah 209, 289 Pac. 103.

While surrender of custody of a minor child by a parent is presumed to be temporary unless the contrary is made to appear, Adair v. Clure, 218 Iowa 482, 255 N.W. 658, here the contrary intention was shown by her own letter.

The court also found that the mother's attempt to contact the children personally by letter or telephone had been thwarted by the father and his present wife. There is evidence that on two occasions at approximately ten o'clock at night the present wife of the father of the children refused to awaken the children and call them to the telephone, but the evidence shows that the mother has been permitted frequent visitations with the children whenever she so desired.

The court found that the father has two children by his present wife and the latter has two children as a result of a prior marriage. This finding is according to the evidence but practically the same could be said of the situation regarding the mother of these three children. She has had one child as a result of her present marriage with Mandeles, and the latter has two children, by virtue of a former marriage living with the

couple at least part of the time. The situation in this regard does not furnish justification for changing the custody of the children from the father to the mother.

The court found that petitioner's present husband knows the children and likes them and wants them in the home, but this same statement could be made with reference to Ruth Lessley, the present wife of the father of these children.

We find nothing in the record to support a conclusion that the best interests of these children require that their custody be transferred from their father to their mother.

The judgment of the district court is reversed and the custody of the three children in question be permitted to remain with the father. It is of course appropriate to say that the mother should be entitled to the right of visitation of the children at reasonable times, and if this may not be voluntarily accomplished the matter can be appropriately decreed by the court.

MR. CHIEF JUSTICE HARRISON. and MR. JUSTICES CASTLES, BOTTOMLY and ADAIR, concur.