No. 13813

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

———————————

IN THE MATTER OF THE GUARDIANSHIP
OF DeAUNA D. DONEY and TERRENCE R. DONEY,
Minors.

———————————

Appeal from:  District Court of the Eighteenth Judicial District,
              Honorable Frank E. Blair, Judge presiding.

Counsel of Record:

    For Appellant:

        Berg, Angel, Andriolo and Morgan, Bozeman, Montana
        Gregory Morgan argued, Bozeman, Montana

    For Respondent:

        Bolinger and Wellcome, Bozeman, Montana
        H. A. Bolinger argued, Bozeman, Montana

———————————

                              Submitted: September 16, 1977
                                Decided: OCT 14 1977

Filed: OCT 14 1977

Thomas J. Kearney
                              ————————— Clerk

Mr. Chief Justice Paul G. Hatfield delivered the Opinion of the Court.

Petitioner, Waide Lewis Doney, appeals from an order of the district court, Gallatin County, denying his petition to terminate respondent's guardianship of petitioner's two minor children, and maintaining custody of the children in respondent "until the further or other order of the court".

Petitioner is the natural father of DeAuna Doney, born March 13, 1974, and Terrence Doney, born July 17, 1975. Petitioner married the children's mother, Leah Doney, on October 26, 1969. Leah Doney was killed in an auto accident on September 28, 1976.

Petitioner testified that he was confused after his wife's death and determined that it would be best for the children if they stayed with Leila Wallace, his deceased wife's sister, for about two months while he composed himself and prepared to take the children into his home. On October 8, 1976, petitioner met with respondent Leila Wallace, respondent's brother and her lawyer, and signed guardianship papers, giving his consent to give temporary custody of the children to Leila Wallace. Petitioner was not represented by counsel at this meeting. The stated understanding of petitioner, respondent, and respondent's lawyer was that petitioner would consent to the guardianship for the sole purpose of allowing respondent Leila Wallace to authorize hospital and medical care for the children in petitioner's absence. Petitioner told respondent's lawyer that he did not want to give up his custodial rights and that it would not be more than two months before he would be ready to make a home for the children. On October 12, 1976, the district court appointed respondent as guardian of the children.

Petitioner married his present wife, Janice, on February 3, 1977. Prior to their marriage they visited the children at respondent Leila Wallace's home in mid-October, early November,

and late November, 1976. On their final visit, petitioner requested custody of the children and respondent refused.

On January 14, 1977, petitioner filed a motion to show cause why the guardianship should not be terminated. At the hearing on the motion to show cause, respondent presented no evidence to show that the children were dependent and neglected (section 10-1301, R.C.M. 1947) while in the custody of petitioner. Respondent did present evidence that petitioner was $4,500 in debt, that petitioner had contemplated bankruptcy, that petitioner and his present wife had lived together before his former wife's death, and that petitioner and his wife lived in a one-bedroom house that would be quite cramped with the addition of two children.

Petitioner presented evidence that he and his wife loved and wanted to raise the children, that he earned $800 per month, that they planned to either build another bedroom onto the house or move to a larger home, that his little girl felt much affection and love for him, and that respondent Leila Wallace was trying to make the children think that she and her husband were their true parents.

The judge refused to terminate the guardianship. He based his decision on petitioner's "disgraceful relationship * * * absent benefit of clergy or civil rite" with his present wife before their marriage, petitioner's failure to substantially contribute to his children's support after September, 1975 (refuted by the evidence at the hearing), and on the good care that the children received while in respondent's custody. The court further noted that it did not deem Waide Doney to be a fit and proper custodian. Petitioner appealed the district court's ruling to this Court.

The issue presented on appeal is whether a natural parent may be deprived of custody of his children absent a finding of dependency, abuse or neglect.

Surrender of custody of a minor child by a parent is presumed to be temporary unless the contrary is made to appear. State ex rel. Lessley v. District Court, 132 Mont. 357, 318 P.2d 571 (1957). There is no evidence in this case to rebut that presumption. Rather, it is undisputed that petitioner signed the guardianship papers solely to allow respondent to consent to the children's medical care. Petitioner stated that he thought that he would be ready to take custody of the children within two months of his wife's death. This he attempted to do, but respondent refused to return custody of the children to petitioner.

The order of the district court, though couched in temporary custody and temporary guardianship terms, is tantamount to a permanent custody order. The district court based its order on findings that petitioner had in the past failed to substantially support his children, that petitioner had carried on a disgraceful extramarital affair, that respondent provided a good home. None of these are factors which petitioner can in the future change. The court further found petitioner "not a fit and proper person" to have custody of the children. At the most, the evidence revealed petitioner to be financially troubled, but genuinely concerned about providing a stable and loving home for his children.

Where a child has allegedly been abused or neglected by his natural parent, the state has a clear duty to protect the child by means of a judicial hearing to determine whether the youth is in fact abused or neglected. There are, however, few invasions by the state into the privacy of the individual that are more extreme than that of depriving a natural parent of the custody of his children. For this reason, the legislature carefully enunciated the procedures the state must follow and the findings which the court must make before custody of a child may legally be taken from his natural parent. A judicial hearing and finding

- 4 -

of dependency and neglect under Title 10, Chapter 13, R.C.M. 1947, or judicial finding of willful abandonment or willful nonsupport under section 61-205, R.C.M. 1947, are the exclusive means by which a natural parent may be involuntarily deprived of custody of his children. In the absence of such showing, the natural parent is legally entitled to the custody of his minor children. Section 61-105, R.C.M. 1947.

This careful protection of parental rights is not merely a matter of legislative grace, but is constitutionally required. Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L ed 2d 551 (1972). " * * * The integrity of the family unit has found protection in the Due Process Clause of the Fourteenth Amendment, Meyer v. Nebraska, supra at 399, 67 L.Ed at 1045, the Equal Protection Clause of the Fourteenth Amendment, Skinner v. Oklahoma, supra at 541, 86 L.Ed at 1660, and the Ninth Amendment, Griswold v. Connecticut, 381 U.S. 479, 496, 14 L Ed 2d 510, 522, 85 S.Ct. 1678 (1965) (Goldberg, J., concurring)." Stanley, 31 L ed 2d at 559.

The judgment of the district court in this case must be reversed, and custody of the children returned to petitioner, since there was no showing under Title 10, Chapter 13 that the children were abused or neglected. Nor may the district court indefinitely deprive petitioner of the custody of his children by means of the subterfuge of a guardianship which has outlived the purposes for which it was created.

Respondent argues that the best interests of the children dictate that she, rather than the children's natural father, retain custody. Respondent cites Foss v. Leifer, ____Mont.____, 550 P.2d 1309, 1311, 33 St.Rep. 528 (1976) for the proposition that " * * * the lodestar of the district court in exercise of its discretion is the welfare and best interests of the child, and not the parent." This "best interests of the child" test, however,

is used only after a showing of dependency or abuse or neglect by the natural parent, as defined in section 10-1301, R.C.M. 1947, or in custody disputes between two natural parents. In re Declaring Fish a Dependent and Neglected Child, ____Mont.____, ____P.2d____, 34 St.Rep. 1080 (1977); Henderson v. Henderson, ____Mont.____, ____P.2d____, 34 St.Rep. 942, (1977); See, August v. Burns, 79 Mont. 198, 255 P. 737 (1927). Without the required statutory showing that petitioner had abused or neglected his children, the district court under the facts of this case had no jurisdiction to deprive the natural father of their custody. The state is entirely powerless to deprive a natural parent of the custody of his minor children merely because a district judge or a state agency might feel that a nonparent has more financial resources or pursues a "preferable" lifestyle.

> "Manifestly, the expression 'welfare of the child' was never intended to penalize a parent because he may not be financially able to provide his child with the comforts and advantages which more fortunate parents may provide for their children. All the law requires is that the parent be honest and respectable, with disposition and capacity to maintain and educate his child." Ex Parte Bourquin, 88 Mont. 118, 124, 290 P. 250 (1930).

The judgment of the district court is reversed and custody of the children is ordered to be returned to petitioner.

_____
Chief Justice

We concur:

_____

_____

_____
Justices