No. 88-413

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

IN THE MATTER OF
L.W.K., D.E.K., A.J.K,
Youths in Need of Care.

APPEAL FROM: District Court of the Thirteenth Judicial District,
In and for the County of ~~Fillner~~, Yellowstone
The Honorable Russell Fillner, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Jeffrey T. Renz, Billings, Montana

For Respondent:

Hon. Marc Racicot, Attorney General, Helena, Montana
John Paulson, Asst. Atty. General, Helena
Harold Hanser, County Attorney; Greg S. Mullowney,
Deputy County Atty., Billings, Montana
Damon L. Gannett; Olsen, Christensen & Gannett,
Billings, Montana

Submitted on Briefs: Dec. 9, 1988

Decided: January 27, 1989

Clerk

FILED
Filed: '89 JAN 27 AM 10 35
ED SMITH, CLERK
MONTANA SUPREME COURT

Mr. Justice William E. Hunt, Sr., delivered the Opinion of the Court.

The District Court of the Thirteenth Judicial District, Yellowstone County found that the best interests of L.W.K., D.E.K., and A.J.K., minor children, were to terminate their natural father's parental rights. George K., the father, appeals. We affirm.

The issues raised on appeal are:

(1) Whether the District Court erroneously placed the burden of proof on the natural father when determining whether the court-approved treatment plan was successfully completed.

(2) Whether the court-approved treatment plan devised for the natural father, George K., was inappropriate as a matter of law because of allegations that the State failed or refused to perform its tasks under the plan.

George K. and Norma H. were married May 6, 1969 and are the natural parents of five children. Two of the five children were emancipated prior to this appeal. Throughout the marriage, George worked primarily as a musician and as a laborer as the opportunities arose. He was generally unemployed during the winter months. George managed the finances for the family, which generally lived in varying degrees of poverty and in homes that ranged from untidy to filthy.

In November, 1978, George pled guilty to aggravated assault of his two youngest children who were then three and four years of age. After this incident, Norma left the family residence with the five children and filed for dissolution of her marriage. In October, 1979, George's and Norma's marriage was dissolved, with Norma receiving custody

of the children and George receiving reasonable visitation. Norma was not granted child support at that time because George was disabled and unemployed.

From the time of separation in May, 1978, Norma and the children moved several times and finally settled in a house without water or heat. Concern for the children emerged from several sources, including the school, the Big Brothers and Sisters program, and juvenile authorities. Norma eventually consented to place the children in foster care and to commence an evaluation of herself and the children. After the evaluations, Norma attempted to care for the children with welfare assistance and supervision. She worked two jobs in an effort to support herself and the children, but after a trial period, she concluded that the situation was not in the best interests of the children. The Montana Department of Social and Rehabilatation Services (SRS) sought and was granted, with Norma's consent, temporary custody of the children.

Throughout this time, George lived first with his mother, then a girlfriend, and then finally with another girlfriend, Jean Z., and her three children. George and Jean were married in February, 1984. During this time, George visited his children at random and occasionally babysat for them. George was thus aware of the conditions under which his children lived in the various locations.

In May, 1984, Norma, on her own volition and after discussing the possibility of adoptions through SRS, signed relinquishments as to the three youngest children--L.W.K., D.E.K. and A.J.K. George did not agree to such an action and therefore SRS considered granting custody of the three youngest children to George, to live in a home with him and his new wife, Jean. However, in March, 1984, one of Jean's children, D.Z., then twelve years of age, was discovered to

have a burn on his foot that SRS suspected was a result of deliberate abuse by George. SRS investigated the matter and found the home of George and Jean to be very unkempt and unclean. In an effort to make improvements, George and Jean entered a service/treatment agreement with SRS. Neither party found the results satisfactory and, pursuant to the request of George's attorney, the effort was discontinued.

In October and December, 1984, another social worker from SRS attempted to establish service/treatment programs with George and Jean to determine whether to recommend placement of George's three youngest children in their home. Failure again resulted and SRS then filed a petition to secure permanent custody of the three youngest children. George opposed the petition.

The District Court found that the children were youths in need of care. In making this determination, the court relied on many factors, including the 1984 injury to Jean's child, D.Z.; George's failure to provide for the children even though he was aware of their dire needs and had an ability to respond; George's lack of any real interest in having custody of the children; his psychological abuse of the children; and his lack of taking voluntary steps to improve himself or to serve the best interests of the children. The court then noted that the criteria for termination of a parent-child legal relationship are set forth in § 41-3-609(1), MCA. The pertinent portion of this statute for this case reads:

> (1) The court may order a termination of the parent-child legal relationship upon a finding that the circumstances contained in subsection (1)(a), (1)(b), or (1)(c) . . . :
>
> . . .

(c) The child is an adjudicated youth in need of care and both of the following exist:
(i) <u>an appropriate treatment plan that has been approved by the court</u> has not been complied with by the parents or has not been successful; and
(ii) the conduct or condition of the parents rendering them unfit is unlikely to change within a reasonable time (emphasis added).

The court then found that neither of the two treatment plans suggested by SRS were, as required by the statute, approved by the court. The court therefore held SRS's request for permanent custody in abeyance, pending implementation of a court-approved treatment plan and receipt of evidence indicating whether George successfully complied with the plan. A court-approved treatment plan was adopted on April 14, 1986 for a six month period beginning May 1, 1986.

On March 3, 1988, after a hearing was held, the District Court found that George did not successfully comply with the treatment plan implemented by the court on April 14, 1986. In making this determination, the court found that George did not comply with several of the required tasks, including meeting regularly with Dr. Dee Woolston, a therapist; meeting with Sally Brewer, D.E.K.'s therapist, on a scheduled basis; completing a series of parenting classes; visiting A.J.K. and D.E.K.; establishing contact with L.W.K.; and providing a home large enough to accommodate all the children. The District Court therefore found that terminating the parental rights of George is in the best interests of the children and granted permanent legal custody of the children to the Montana Department of Family Services with authority to assent to their adoption. The court also concluded that, if possible, the best interests of D.E.K. and A.J.K. will be served if George and Norma remain in contact with them.

The first issue raised on appeal is whether the District Court erroneously placed the burden of proof on the natural

father when determining whether the court-approved treatment plan was successfully completed.

When determining that George failed to comply with the court-approved treatment plan, the District Court stated throughout its Findings of Fact and Conclusions of Law that "George failed to show that he complied . . . ." George argues that when terminating parental rights, the State has the burden of proof and must show its case by clear and convincing evidence. George therefore argues that the District Court erroneously placed the burden of proof on him, the natural father, as evidenced by these statements.

Procedures employed by a state, seeking to terminate the relationship between a parent and a child, must meet the requisites of the Due Process Clause of the Fourteenth Amendment. Lassiter v. Dept. of Social Services (1981), 452 U.S. 18, 24-32, 101 S.Ct. 2153, 2158-62, 68 L.Ed.2d 640. This Court also recognizes that depriving natural parents of the custody of their children constitutes an extreme invasion by the State into an individual's privacy. In the Matter of Doney (1977), 174 Mont. 282, 285, 570 P.2d 575, 577.

The criteria for terminating parental rights in this state are set forth in § 41-3-609, MCA. The specific provision under which the court terminated George's parental rights states that the court must find that the children are youths in need of care, the parents have not complied with an appropriate court-approved treatment plan, and the parents' conduct or condition rendering them unfit is unlikely to change within a reasonable time. Section 41-3-609(1)(c), MCA. In the case, In the Matter of J.L.B. (1979), 182 Mont. 100, 594 P.2d 1127, this Court held the standard of proof required when terminating parental rights is "clear and convincing." J.L.B., 182 Mont. at 116-17, 594 P.2d at 1136-37. The United States Supreme Court has subsequently

held that when terminating parental rights a "clear and convincing evidence" standard of proof adequately satisfies the Due Process Clause of the Fourteenth Amendment. Santosky v. Kramer (1982), 455 U.S. 745, 769-70, 102 S.Ct. 1388, 1403, 71 L.Ed.2d 599.

The parent always has the responsibility to comply with the treatment plan. When the State petitions to terminate parental rights--a right deemed essential by the United States Supreme Court, see Meyer v. Nebraska (1923), 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042--the burden falls on the State to prove by clear and convincing evidence all the elements necessary to terminate a parent's right under the appropriate statute. Under § 41-3-609(1)(c), MCA, the State must therefore prove by clear and convincing evidence that the child is a youth in need of care, that the parent did not comply with a court-approved treatment plan, and that the condition will not change within a reasonable time.

While the District Court suggested that the burden of proof was on the natural father, George, to show by clear and convincing evidence that he did not comply with the court-approved treatment plan, the record clearly indicates that the State carried this burden. The State submitted reports and brought forth the witnesses which testified on matters upon which the court based its finding that George did not comply with the treatment plan. We therefore hold that the State met its burden of showing that George did not comply with the treatment plan by clear and convincing evidence.

The second issue on appeal is whether the court-approved treatment plan devised for the natural father, George K., was inappropriate as a matter of law because of allegations that the State failed or refused to perform its tasks under the plan.

George notes that under the treatment plan, tasks were established for SRS as well as George. George then argues that SRS refused to carry out its tasks, and therefore the treatment plan was unrealistic. In his argument, George states that he understood that after his one meeting with Dr. Woolston, he did not need to see Dr. Woolston again; that SRS refused to assist in establishing a regular schedule of appointments with Sally Brewer and in finding a parenting course with a "more realistic schedule;" that SRS failed to keep appointments and inadequately informed George about his progress. George therefore argues that if SRS fails or refuses to perform its part of the treatment plan, contributing to the parents' failure of the plan, then a treatment plan should be inappropriate as a matter of law.

We disagree with George's assertion that SRS failed or refused to perform its tasks under the treatment plan. The District Court had the advantage of observing the demeanor of the witnesses and assessing their credibility and therefore was in the best position to resolve conflicts in the evidence. Weyler v. Kaufman (1981), 196 Mont. 132, 136, 638 P.2d 393, 396. While conflicting evidence may exist, this Court will not set aside the District Court's findings of fact unless they are shown to be clearly erroneous. Rule 52(a), M.R.Civ.P.

In the present case, the District Court noted the conflicting evidence between George and Dr. Woolston, and found that George felt, after one meeting with Dr. Woolston, that he did not need therapy with Dr. Woolston. Likewise, the court found that George attended only twenty-three of the thirty-five scheduled meetings with Sally Brewer, George's son's therapist, but did not, as required by the plan, inform Sally Brewer that he would be missing any meetings nor did he provide a reasonable excuse. The court also found that

George did not seek nor require any assistance in setting up the appointments with the therapists, but rather showed a general lack of interest in attending these meetings and in providing his children with the necessities of life. The agency's counter task for this provision stated that the agency is "to <u>assist</u> in establishing a regular schedule of appointments . . . with the therapists . . . " (emphasis added). While the State was responsible to assist George, the State was not required to force George to attend therapy with Dr. Woolston or to attend meetings with his son's therapist.

In light of the above, we conclude that George's basic premise, that the State failed or refused to perform its tasks under the treatment plan, lacks merit. We therefore need not determine whether a court-approved treatment plan is inappropriate as a matter of law when the State fails or refuses to perform its tasks and affirm the District Court's decision to terminate George's parental rights in regards to L.W.K., D.E.K. and A.J.K.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices