No. 98-275

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 309N

IN RE THE CUSTODY OF S.C.,

a Minor Child,

BRIAN CASMAN,

Petitioner and Appellant,

and

AURIA GILMORE,

Respondent and Respondent.

APPEAL FROM: District Court of the Fourth Judicial District,

In and for the County of Missoula,

The Honorable John W. Larson, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Christopher Daly, Attorney at Law, Missoula, Montana

For Respondent:

Hilary Bush, Montana Legal Services Association, Missoula, Montana

Submitted on Briefs: November 19, 1998

Decided: December 15, 1998

Filed:

_____

Clerk


Justice W. William Leaphart delivered the Opinion of the Court.


**¶1. Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number, and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.**

**¶2. Brian Casman (Casman) appeals from the Custody Decree entered April 3, 1998 by the Fourth Judicial District, Missoula County. Casman, the father, contends that the court adopted a proposed decree presented by the mother, Auria Gilmore (Gilmore), without first affording Casman the opportunity to respond in writing or an opportunity for a hearing, thereby denying him due process of law.**

**¶3. The procedural background is as follows: A trial as to all issues was held on September 19, 1996. On December 20, 1996, the court issued an Interim Custody Decree which provided that the parties were granted joint custody of S.C. and that neither party would be designated primary custodian until final reports from the guardians ad litem in Montana and Florida were received. The decree further stated that a final order regarding a visitation schedule would be entered by the court upon receipt of the recommendations of the guardians ad litem. Although the court did receive the final guardian ad litem reports a few months later, it issued temporary orders granting Gilmore parenting time with S.C. in Florida and requiring additional steps before a final decree would be entered. Two of these temporary orders specifically indicated that another hearing would be scheduled with regard to**

a final decree. The last such temporary order provided: "The Court expressly retains jurisdiction to enter further amendments and to issue a final custody and visitation order and decree upon the child's return to Montana in March 1998."

¶4. By agreement of the parties, the minor child was brought back to Montana in mid-February, 1998. Relying on the District Court's earlier orders, Casman expected that a hearing would then be scheduled. Although no time frame had been established for submission of motions or proposed decrees, counsel for Gilmore, on March 26, 1998, filed a Motion for Final Determination of Custody and Visitation along with a Proposed Custody Decree, which was served upon counsel for Casman. Gilmore requested that the court adopt her proposed decree or, in the alternative, set a hearing for a final determination of custody and visitation. The District Court signed Gilmore's proposed decree as its final order on March 27, 1998, the day after the motion was filed. Casman appeals from that order.

¶5. Casman contends that under Rule 2 of the Uniform District Court Rules, he had ten days within which to reply to Gilmore's motion and that the District Court, in granting Gilmore's motion without first affording him an opportunity to address the fundamental issue of custody of his child, denied him due process of law under the United States and Montana Constitutions.

¶6. Gilmore concedes that when she filed her motion for a final decree she expected that the court would permit Casman time to respond. She contends, nonetheless, that the court did not abuse its discretion in signing the proposed decree since, "[e]ven if Judge Larson had waited for Father's response to the Motion, it is extremely doubtful that he would have made a materially different decision in this case." This contention is pure speculation. We have no means of knowing what the District Court's decision would have been if it had had the benefit of a response from Casman or if it had held a hearing as previously promised. We do know that due process requires that Casman be given an opportunity to respond to Gilmore's motion. The opportunity to respond is particularly cogent given that the issue before the court involved Casman's fundamental right to custody of his child. *See* Matter of Guardianship of Doney (1977), 174 Mont. 282, 286, 570 P.2d 575, 577. Further, it was particularly vital that Casman be allowed to address any issues or reports that had developed in the intervening 18 months since the trial in September of 1996.

¶7. We hold that the District Court erred in adopting Gilmore's proposed decree

**without first affording Casman an opportunity to respond. The Custody Decree entered on April 3, 1998 is reversed and this matter is remanded for the purpose of allowing Casman an opportunity to respond to Gilmore's motion and for the court to rule on the motion, or, if it deems it appropriate, to conduct a further hearing.**

/S/ W. WILLIAM LEAPHART

We concur:


/S/ J. A. TURNAGE

/S/ JAMES C. NELSON

/S/ JIM REGNIER

/S/ TERRY N. TRIEWEILER