No. 99-675

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 120

IN RE THE MATTER OF THE PARENTING

OF J.N.P., a minor child,

GORDON L. KNOPP and JUDITH E. KNOPP,

Petitioners and Appellants,

v.

TAMMY LYNN KNOPP and SHANE LEE

PARENTEAU,

Respondents and Respondents.

APPEAL FROM: District Court of the Eleventh Judicial District,

In and for the County of Flathead,

The Honorable Ted O. Lympus, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Dean D. Chisholm, Kaplan & Chisholm, PLLP, Columbia Falls, MT

For Respondent:

Paula Johnson, Attorney at Law, Whitefish, MT (For Tammy Lynn Knopp)

Submitted on Briefs: January 9, 2001
Decided: July 23, 2001

Filed:

_____

Clerk

Justice Terry N. Trieweiler delivered the Opinion of the Court.

¶1 The Petitioners, Gordon L. and Judith E. Knopp, filed a petition for a parenting plan of a minor child, J.N.P., the natural daughter of Tammy Lynn Knopp, in the District Court for the Eleventh Judicial District in Flathead County. The District Court concluded that it had no authority to grant a parenting plan to Knopps absent termination or suspension of Tammy Lynn's parental rights. Therefore, the Court dismissed Knopps' petition for a parenting plan. Knopps appeal from the District Court's order dismissing their petition. We affirm the order and judgment of the District Court.

¶2 The sole issue on appeal is whether the District Court erred when it concluded that it had no authority to grant the Knopps' petition for a parenting plan absent suspension or termination of the natural parents' parental rights.

¶3 The District Court dismissed Knopps' petition based on its conclusion of law that it was without authority to grant the petition. We review a district court's conclusions of law to determine whether they are correct. *Carbon County v. Union Reserve Coal Co.* (1995), 271 Mont. 459, 469, 898 P.2d 680, 686.

## FACTUAL BACKGROUND

¶4 Tammy Lynn Knopp is the young and single mother of J.N.P. Gordon and Judith Knopp are her uncle and aunt.

¶5 When Tammy was financially unable to provide for her children, she left one son who is uninvolved in this case with her mother until she could care for him. Knopps offered to take care of her daughter, J.N.P., until Tammy "got on her feet." She agreed to leave J.N.P. with Knopps at their residence on a temporary basis until she found employment and a place to live in Great Falls. Tammy signed a document prepared by Gordon entitled "temporary guardianship" which purportedly was for the sole purpose of authorizing

Knopps to seek medical attention for Tammy's daughter if it became necessary.

¶6 Tammy placed her daughter in the temporary care of the Knopps on December 30, 1998, and left for Great Falls to look for employment. This action was commenced on March 5, 1999, when Gordon and Judith Knopp petitioned for a parenting plan and child support for J.N.P. Although the document they filed is referred to as a "petition for parenting plan, child support and medical support," the petition sought designation of Knopps as custodians of the child, sought an order that the child reside with Knopps and sought to limit the natural mother and father to restricted and supervised visitation. If it had been granted, the parenting plan would have given Knopps authority to make the child's medical decisions, day-to-day decisions, educational decisions, non-emergency health care decisions, decisions about her spiritual development, and required Knopps' consent for the child to marry, obtain a driver's license, enlist in the armed services, get a tattoo or have any part of her body pierced. In other words, the Knopps' petition was the functional equivalent of a petition for custody of J.N.P.

¶7 Knopps applied for temporary custody and received it on an *ex parte* basis so that when Tammy Lynn returned and sought to remove her daughter to their new home, she was not allowed to do so.

¶8 On July 1, 1999, Tammy Lynn appeared through her attorney and moved the court to terminate the guardianship and restore her parental rights. In support of her motion, she represented that she left her daughter temporarily with Knopps on December 28, 1998, until she could get financially established in a new community, and that she was now employed full time and had a stable residence but that her aunt and uncle (Knopps) had denied her custody of her child. She also pointed out that her parental rights had never been terminated nor suspended.

¶9 In support of her motion to dismiss the petition, J.N.P.'s mother argued that parental rights can only be terminated pursuant to Title 41 and that this Court had previously held that a temporary guardianship granted by a mother to a non-parent did not amount to a termination by circumstances. She cited and relied on *Guardianship of D.T.N.* (1996), 275 Mont. 480, 914 P.2d 579. She argued that as a matter of law, Knopps were not proper parties to a parenting plan prior to termination of her parental rights.

¶10 Knopps objected to the mother's motion to dismiss based on § 40-4-211, MCA, and the "best interest" standard found at § 212.

¶11 The District Court held a hearing to consider Knopps' petition and the mother's motion to dismiss on August 24, 1999. Prior to that hearing, the natural mother filed a supplemental brief in which she again restated that the court did not have legal authority to award custody to a non-parent until the natural parent's rights have been terminated. She again cited to our decision in *D.T.N.* and made other statutory arguments.

¶12 At the hearing to consider Knopps' petition, the District Court heard testimony from Gordon L. Knopp and Tammy Lynn. The essence of their testimony was summarized previously in this opinion. However, in addition, both agreed that no proceedings had ever been commenced by the state or county to terminate Tammy Lynn's parental rights. Nor was there any effort to demonstrate that the child had ever been abused, dependent or neglected. At the conclusion of the testimony, the District Court made the following statements in open court:

> THE COURT: Well, I just read this *D.T.N.* case. Have you read that?
>
> MS. LEATZOW: No, I have not.
>
> THE COURT: I hadn't either. It's cited in Paula's brief. I don't think that I have any resource - let me read to you from this case. This is a 1996 decision authored by Justice Trieweiler reversing the Ravalli County District Court - an order of the Ravalli County District Court, which granted a petition similar to the petition here, and the mother appealed.
>
> And in that decision the court said that - they cited the *Aschenbrenner* case, which was a decision where they terminated the custodial rights of a natural parent. They held that parental rights could not be terminated in that matter. They went on to say, then, in this decision, whether the grandparents - this was grandparents seeking a petition similar to this - whether the grandparents were better able to provide a good environment for the children - excuse me, let me read this again: Whether the grandparents were better able to provide a good environment for the children than the mother was irrelevant because <u>the mother had a fundamental constitutional right to the custody of her children</u>.
>
> Quoting down, they said: The "best interest of the child" test is only relevant after there has been a showing of dependency or abuse or neglect pursuant to our termination of parental rights statutes, or in custody disputes between two natural

parents. However, where third parties seek custody, it has long been the law in Montana that the right of the natural parents prevails until a showing of a forfeiture of this right. We have held that that kind of determination could not be made in a guardianship proceeding instituted by paternal grandparents, but only in a proceeding instituted to have children declared dependent and neglected, brought by the county attorney pursuant to Title 41, Chapter 3 of Montana Code Annotated.

I don't necessarily - it doesn't matter whether I necessarily agree with that or not, but the Montana Supreme Court has unequivocally said in this decision, and did so in a decision just a matter of weeks ago, reversing a decision in this court terminating parental rights that a - that parental rights are a fundamental, constitutional right. They don't talk anything about responsibility, they talk about rights.

Now, that may not necessarily be correct, but that's the law in Montana, promulgated by the Supremes, and I'm obliged to follow it. And under the circumstances here, I don't see - unless you can argue something contrary to why this is not applicable law - that I have any recourse but to dismiss the petition.

¶13 The District Court's written order was entered on September 7, 1999, and J.N.P. has been with her mother since that time.

## DISCUSSION

¶14 An understanding of the current posture of the case requires an understanding of three relevant cases. They are *In Re Guardianship of D.T.N.* (1996), 275 Mont. 480, 914 P.2d 579; *In Re A.R.A.* (1996), 277 Mont. 66, 919 P.2d 388; and *Girard v. Williams,* 1998 MT 231, 291 Mont. 49, 966 P.2d 1155.

¶15 In *DTN,* a child's paternal grandparents petitioned for guardianship pursuant to the guardianship provisions of the Uniform Probate Code found at §§ 72-5-201 through 234, MCA. The district court granted their petition over opposition by the natural mother based on provisions of that Act as well as provisions of the Uniform Marriage and Divorce Act, including §40-4-212, MCA, which bases custody on a child's best interest. We limited our review to the probate code which limited appointment of a guardian for an unmarried minor to situations where "all parental rights of custody have been terminated or . . . suspended . . . by circumstances or prior court order." Section 72-5-222(1), MCA. However, in arriving at our decision we relied on *In Re Aschenbrenner* (1979), 182 Mont.

540, 597 P.2d 1156, which also addressed the Uniform Marriage and Divorce Act. There we stated:

> However, where third parties seek custody, it has long been the law in Montana that the right of the natural parent prevails until a showing of a forfeiture of this right. *Ex parte Borquin*, 88 Mont. 118, 290 P.2d 250 (1930). *See also Matter of Fisher*, 169 Mont. 254, 545 P.2d 654 (1976). *The Uniform Marriage and Divorce Act does not change this law*. This forfeiture can result only where the parent's conduct does not meet the minimum standards of the child abuse, neglect and dependency statutes.

*Aschenbrenner, 182 Mont. at 550, 597 P.2d at 1162-63. (Emphasis added.)*

¶16 We also held in *Aschenbrenner* that a finding of dependency or neglect could only be made in proceedings commenced by a county attorney pursuant to Title 41, Chapter 3 of the Montana Code. That finding could not be made in guardianship proceedings. We held that since the natural mother's parental rights had not been terminated nor suspended by circumstances, the District Court erred when it awarded permanent guardianship to the grandparents.

¶17 In *A.R.A.,* the issue was whether following the death of a child's custodial parent, a step-parent could be awarded custody of that child in spite of the fact that a non-custodial, natural parent claimed custody. Section 40-4-221, MCA (1997), at that time provided that upon the death of a parent who had custody of a child, custody should pass to the non-custodial parent unless a surviving spouse of the deceased parent seeks custody. In that event custody was to be determined based on the child's best interest. After a hearing, the District Court found it in the child's best interest that she remain with her step-father. On appeal her natural father contended that use of the child's best interest as the standard for determining custody denied him his constitutional right to parent his child. This Court agreed. We noted that:

> We recognized the constitutional rights of a natural parent to parent his or her child in *In re Doney* (1977), 174 Mont. 282, 570 P.2d 575.
>
> > This careful protection of parental rights is not merely a matter of legislative grace, but is constitutionally required. *Stanley v. Illinois*, 405 U.S. 645, 92 S. Ct. 1208, 31 L.Ed.2d 551 (1972). "*** The integrity of the family unit has found protection in the Due Process Clause of the Fourteenth Amendment,

> *Meyer v. Nebraska, supra* [262 U.S. 390], at 399 (43 S.Ct. 625], 67 L.Ed. [1042], at 1045, the Equal Protection Clause of the Fourteenth Amendment, *Skinner v. Oklahoma, supra* [316 U.S. 535], at 541 [62 S.Ct. 1110], 86 L.Ed. [1655], at 1660, and the Ninth Amendment, *Griswold v. Connecticut,* 381 U. S. 479, 496, 85 S.Ct. 1678, 14 L.Ed.2d 510, 522 (1965) (Goldberg, J., concurring)." *Stanley,* 405 U.S. at 651, 92 S.Ct. at 1213, 31 L.Ed.2d at 559.

*Doney,* 570 P.2d at 577. In a line of cases following *Doney,* we again stressed the constitutional protection of a natural parent's right to the custody of his or her child. *Babcock,* 885 P.2d at 524; *In re M.G.M.* (1982), 201 Mont. 400, 406, 654 P.2d 994, 998; *Pierce v. Pierce* (1982), 198 Mont. 255, 260, 645 P.2d 1353, 1356; *In re Aschenbrenner* (1979), 182 Mont. 540, 544, 597 P.2d 1156, 1160. This constitutional protection is based upon the integrity of the family unit which necessarily includes the child's right to be with his or her natural parent. *Stanley v. Illinois* (1972), 405 U.S. 645, 652, 92 S.Ct. 1208, 1213, 31 L.Ed.2d 551, 559.

*In re A.R.A., 277 Mont. at 70-71, 919 P.2d at 391.*

¶18 For that reason we held that a statutory scheme which deprives a parent of custody of a natural child based simply on a determination of the child's best interests was unconstitutional. We stated:

> Consequently, the state's ability to intrude upon the parent/child relationship must be guarded. *Schultz v. Schultz* (1979), 184 Mont. 245, 247, 602 P.2d 595, 596; *Doney,* 570 P.2d at 577. For that reason, "[a] finding of abuse, neglect, or dependency is the jurisdictional prerequisite for any court-ordered transfer of custody from a natural parent to a third party." *Babcock,* 885 P.2d at 524. Therefore, where a surviving parent does not voluntarily relinquish custody, the best interest of the child test can be used only after a showing of dependency or abuse and neglect by the natural parent. *M.G.M.,* 654 P.2d at 998; *Aschenbrenner,* 597 P.2d at 1162.

> . . .

> Therefore, the use of the best interest of the child test, as referred to in § 40-4-221, MCA, is improper in that any showing that a nonparent may be able to provide a better environment than can a natural parent is irrelevant to the question of custody between the two in view of the constitutional rights of a parent to custody. *Babcock,*

885 P.2d at 524; *Aschenbrenner*, 597 P.2d at 1162. Accordingly, § 40-4-221, MCA, is unconstitutional to the extent that it allows the granting of a § -221 petition prior to the termination of the natural parent's constitutional rights. We therefore overrule *Brost* and *In re C.G.* in their use of the best interest of the child test to award custody to a nonparent over a natural parent absent a finding of abuse and neglect or dependency.

While we recognize that § 40-4-221, MCA, gives a nonparent standing to request a custody hearing, that section does not give the district court authority to deprive a natural parent of his or her constitutionally protected rights absent a finding of abuse and neglect or dependency. Accordingly, we hold that the District Court erred in awarding custody of A.R.A. to Patrick based on the best interest of the child test in view of the fact there were no allegations of abuse and neglect or dependency on the part of Bill. We therefore reverse the District Court and award custody of A.R.A. to Bill, the natural father.

*In re A.R.A., 277 Mont. at 71-72, 919 P.2d at 392.*

¶19 Finally, in *Girard*, two non-parents petitioned for custody of a child over the objection of the natural father. Their petition was granted and the natural father appealed. We recognized that a parent's right to the custody of his or her child is a fundamental, constitutionally-protected right. We cited *Doney*, *Aschenbrenner*, and *A.R.A.* We reviewed the various statutory schemes pursuant to which custody of a child may be obtained or parental rights terminated; we concluded that in this case custody had been sought by the non-parents pursuant to §40-4-211(4)(b), MCA, of the Uniform Marriage and Divorce Act; and we concluded that a jurisdictional prerequisite for custody when sought by a non-parent was a finding that the child "is not in the physical custody of one of his parents." However, we concluded that "physical custody" for jurisdictional purposes is not based simply on possession of the child but requires that the natural parent have voluntarily relinquished his right to physical custody. Because "voluntary relinquishment" had not been shown, we reversed the District Court and returned custody to the natural father. We also noted that § 211 had been amended in 1997 and that our discussion was limited to the language of § 211 as it existed in the 1995 act. We also held that Title 41, Chapter 3 could not be used as a basis for denying the natural father custody because a determination that the children were abused or neglected for purposes of removing them from their parent's custody could only be made following proceedings commenced by a county attorney or the attorney general's office pursuant to the procedures set forth in Title 41, Chapter 3

which had not been followed in this case.

¶20 Both *DTN* and *A.R.A.* were based on constitutional considerations. *Girard* was based on standing as defined by statute in the Uniform Marriage and Divorce Act. The statutory language relied on in *Girard* was amended in 1997. The statute now only requires a showing that the child is not residing with his or her parent. It is the 1997 version of § 40-4-211(4)(b), MCA, that is applicable to this case. However, the constitutional implications from the Knopps' petition have not changed from those which we identified in *In re A.R.A.*

¶21 The statutory scheme on which Knopps rely suffers from the same constitutional infirmity as the statute we invalidated in the case of *In re A.R.A.* Section 40-4-211(4)(b), MCA (1997), permits a non-parent of a child temporarily residing with someone other than the parent to petition the district court for legal custody of that child. That petition must then be decided by the district court based on the "best interest of the child" standard set forth at §40-4-212, MCA (1997).

¶22 On appeal Knopps contend that the District Court erred by relying on *D.T.N.* because it applied to guardianship proceedings which require termination of parental rights. They contend that this petition was filed pursuant to § 40-4-211 of the Uniform Marriage and Divorce Act which provides for a parenting plan if the child "is not physically residing with one of the child's parents." Knopps acknowledge our decision in *A.R.A.* which arrived at the same result pursuant to the Uniform Marriage and Divorce Act and acknowledge that the concurring opinion reasoned that "other statutes that allow persons other than biological parents to seek custody of a child to the exclusion of a natural parent . . . ." would also seem to be implicated. *See In re A.R.A.*, 277 Mont. at 74, 919 P.2d at 393 (Nelson, J., concurring). However, Knopps contend that *A.R.A.* should be distinguished because at the time § 211(4) pertained to "custody proceeding," whereas the amended version of § 211(4) now refers to a "parenting plan."

¶23 What Knopps overlook is that the rule of law articulated in *D.T.N.* and relied on by the District Court and by the natural mother is the same rule of law articulated in *Aschenbrenner* and *Doney* and ultimately in *A.R.A.* Furthermore, *A.R.A.* is based on a fundamental constitutional right as defined by decisions of the United States Supreme Court applying provisions of the United States Constitution. The only difference between the statute applied in *A.R.A.* and the statute at issue in this case is that the previous statute referred to "custody" whereas this statute refers to a "parenting plan" which in effect provides for custody. Therefore, the result must necessarily be the same.

¶24 The fact that the District Court relied on *D.T.N.* rather than *A.R.A.* is of no consequence. We have repeatedly held that if a district court reaches the correct result, we will affirm it even if it does so for the wrong reason. *See State v. Parker* 1998 MT 6, ¶ 20, 287 Mont. 151, ¶ 20, 953 P.2d 692, ¶ 20; *Clark v. Eagle Systems, Inc.* (1996), 279 Mont. 279, 286, 927 P.2d 995, 999; and *Knutson v. State* (1984), 211 Mont. 126, 129, 683 P.2d 488, 490.

¶25 In this case the District Court not only arrived at the correct result based on our previous case law, it did so for the correct reason which is that a natural parent cannot be denied custody of his or her child absent termination of that person's parental rights for abuse or neglect pursuant to Title 41, Chapter 3 of the Montana Code.

¶26 Our case law does not permit destruction of a natural parent's fundamental right to the custody of his or her child based simply on the subjective determination of that child's best interest. Were we to allow such a result, the implications are obvious. Is it in a child's best interest that he or she be raised in an affluent family as opposed to an impoverished family? Would it be better that a child be raised by extremely intelligent parents rather than people of average intelligence? Is a child better off if that child is raised in a conventional life style rather than an unconventional life style? All of these factors could arguably be considered in determining the child's best interests. However, none even remotely justify denying a parent's constitutional and fundamental right to the custody of his or her child.

¶27 For these reasons, we conclude that the District Court did not err when it concluded it had no authority to grant Knopps' petition for a parenting plan and dismissed that petition. The judgment of the District Court is affirmed.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ JAMES C. NELSON

/S/ PATRICIA COTTER

/S/ JIM REGNIER

## /S/ W. WILLIAM LEAPHART

Chief Justice Karla M. Gray, dissenting.

¶28 I respectfully dissent from the Court's opinion which, in my view, sweeps with far too broad a broom. While I agree entirely with the Court's concerns about a natural parent's fundamental right to parent the child, I would reverse the District Court's order dismissing the Knopps' petition and remand for further proceedings on whether the Knopps are entitled to the parenting plan for which they petitioned.

¶29 In this regard, I begin from the premise that the question before us is essentially one of standing, rather than--as the Court puts it--one to resolve the Knopps' ultimate entitlement to the parenting plan. As the Court states, Tammy Lynn argued in the District Court--and argues again in this Court--that parental rights can only be terminated pursuant to Title 41; she also "argued that as a matter of law, Knopps were not proper parties to a parenting plan prior to termination of her parental rights." These are "standing" arguments, pure and simple. Indeed, the issues as stated in Tammy Lynn's brief on appeal are whether the Knopps "as non-parents have *standing* in a child custody proceeding *to seek* a parenting plan . . ." and whether the trial court erred in dismissing their petition "when the [Knopps] did not have standing. . . ." (Emphasis added.) I agree with the Court's characterization of Tammy Lynn's arguments and also with her issue statements as to what is before us on appeal.

¶30 As a result, we need only--and should only--determine whether the Knopps were entitled to bring their petition for a parenting plan under § 40-4-211, MCA (1997). Section 40-4-211(4)(b), MCA (1997), provides in pertinent part that the parenting plan proceeding may be initiated by a nonparent "by filing a petition for parenting in the county in which the child is permanently resident or found, but only if the child is not physically residing with one of the child's parents." In the present case, it is undisputed that J.N.P. was living with the Knopps at the time they filed their petition and, therefore, was not "physically residing" with either of her parents. Consequently, the Knopps were authorized under the statute to commence a parenting plan proceeding. In my view, this is the basis on which the appeal actually before us should be resolved and where it should end, at least for now. I would reverse the District Court and remand for further proceedings.

¶31 Instead of doing so, however, the Court examines and resolves an issue neither raised nor argued in the District Court or here, namely, the constitutionality of § 40-4-211(4)(b), MCA (1997). In addition, the Court bases its decision on *A.R.A.*, on the theory that we can affirm a trial court if it reaches the right result, regardless of its reasoning. While I agree that we can do so and, in proper cases, in fact do so, it is my view that this is not a proper case. It is one thing to affirm a court on an issue raised but not decided by that court. It is another thing altogether for this Court to simply raise an issue and then resolve it without the benefit of briefing from any party. In the present case, Tammy Lynn does not rely on *A.R.A.* The reason, of course, is that she does not raise the constitutional issue we resolved there.

¶32 For the same reason, Tammy did not comply with Rule 24(d), M.R.Civ.P., in the District Court or Rule 38, M.R.App.P., in this Court. Those Rules require a party challenging the constitutionality of an act of the Montana Legislature in a proceeding to which the State of Montana is not a party to affirmatively take certain acts. In the trial court arena, the party must "notify the Montana attorney general and the court of the constitutional issue[,]" in writing, at the time the document raising the constitutional issue is filed. Rule 24(d), M.R.Civ.P. In this Court, a party challenging the constitutionality of a legislative act must "give notice to the supreme court and to the Montana attorney general of the existence of the constitutional issue[,]" in writing and contemporaneously with the notice of appeal. Rule 38, M.R.App.P. Tammy Lynn did neither.

¶33 By acting so freely in striking down a statute enacted by the Legislature, prematurely and absent having the issue presented and the arguments fully briefed, it is my view that this Court totally subsumes the well-established rule that a statute is presumed constitutional and the burden is on the challenging party to establish that the statute is unconstitutional beyond a reasonable doubt. *See, e.g., Powell v. State Comp. Ins. Fund*, 2000 MT 321, ¶ 13, 302 Mont. 518, ¶ 13, 15 P.3d 877, ¶ 13. I cannot agree with such an approach.

¶34 Finally, I simply do not agree that *A.R.A.* is applicable to the present case in its current procedural posture. Unlike this case, we did not have a standing issue before us in *A.R.A.* There, a stepparent who was statutorily qualified to request custody of his deceased wife's child was awarded custody, over objection by the remaining natural parent, based on the best interest of the child test. *See In re A.R.A.*, 277 Mont. at 68-69, 919 P.2d at 390. While we ultimately held that the trial court erred by applying the best interest of the child test to award custody to a nonparent absent termination of parental rights, we also "recognize[d]

that § 40-4-221, MCA, gives a nonparent standing to request a custody hearing. . . ." *In re A.R.A.*, 277 Mont. at 72, 919 P.2d at 392.

¶35 Here, only the threshold issue of standing is properly before us, by Tammy Lynn's own words. At this point, we should follow the dictates of § 40-4-211(4)(b), MCA, conclude that the Knopps have standing to initiate a parenting plan proceeding, reverse the District Court and remand for further proceedings. Instead, in a possible effort to promote "judicial economy," the Court reaches a constitutional issue not before it and puts the cart before the horse. While I am all in favor of judicial economy, I am not willing to sacrifice so much to achieve it.

¶36 I dissent.

/S/ KARLA M. GRAY