No. 81-571

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

BOYD KELLY BROST,

                    Petitioner and Appellant,

    vs.

WANETA P. GLASGOW,

                    Respondent and Respondent.

Appeal from:  District Court of the Thirteenth Judicial District,
              In and for the County of Yellowstone
              Honorable Diane G. Barz, Judge presiding.

Counsel of Record:

    For Appellant:

        Berger, Sinclair and Nelson, Billings, Montana

    For Respondent:

        Olsen, Christensen & Gannett, Billings, Montana

                    Submitted on briefs: June 10, 1982

                         Decided: September 3, 1982

Filed: SEP - 3 1982

Thomas J. Kearney
                                    Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

Boyd Kelly Brost, the natural father of two minor children, petitioned the Thirteenth Judicial District Court, Yellowstone County, to issue a writ of habeas corpus and remove the children from the physical custody of Waneta Glasgow, their maternal grandmother. Thereafter, the grandmother and her second husband petitioned to adopt the children. The two actions were consolidated by stipulation of the parties. A hearing was held and the court determined that it was in the best interests of the children that the grandmother be awarded custody. The adoption petition was dismissed for lack of jurisdiction. Both the natural father and the grandmother appeal.

We affirm.

The following issues are presented for review:

(1) Whether the District Court lacked jurisdiction to award custody to the grandmother without first terminating the natural father's parental rights.

(2) Whether the District Court erred in dismissing the grandmother's petition for adoption because of lack of jurisdiction.

Boyd Kelly Brost and Waneta Diane Workman were married in Lovell, Wyoming, in 1974. At the time of the marriage both Kelly and Diane were sixteen years of age. A daughter was born on September 3, 1974, and a son was born on October 5, 1977.

Shortly after the birth of their first child, Kelly and Diane moved into the quarters where Waneta Glasgow and her former husband, Mr. Workman, were living. They remained there approximately three months. During the remainder of

-2-

the marriage, Kelly worked at numerous seasonal jobs and the couple lived in several towns in northern Wyoming.

Kelly and Diane separated in the fall of 1977. After the separation, Diane initially resided with Kelly's parents.

In August of 1977, Mrs. Glasgow married James M. Glasgow. The couple moved from Powell, Wyoming, to Laurel, Montana. In late February of 1978, Diane and the two children moved to Laurel. Kelly and Diane were divorced on June 5, 1978, and Diane was awarded care and custody of the children.

Kelly remarried in September of 1978. From January of 1979 until June of 1979, he was without steady employment and failed to make child support payments. In June of 1979, he secured employment as a salesman for Hydro-Chem in Crowley, Wyoming. Kelly could not produce any records to substantiate his claims that he paid Diane monies for support of the children for anytime from the date of his separation until October of 1979. Diane received Aid to Dependent Children payments and Medicaid assistance from the County Welfare Department of Yellowstone County, Montana, from May 1978, until October 1979.

On October 14, 1979, Diane was found dead in her home following an epileptic seizure. Mrs. Glasgow immediately took the children into her home. Kelly first learned of the death of Diane on October 15, 1979, and traveled to Laurel the following day to get his children. Mrs. Glasgow refused to turn the children over to Kelly.

On October 24, 1979, Kelly filed a petition seeking a writ of habeas corpus. The petition requested that the District Court restore the custody of the children to Kelly. Mrs. Glasgow responded requesting that the children remain in her custody. On October 25, 1979, Mrs. Glasgow and her

-3-

husband filed a petition for adoption, seeking to adopt the children. On November 9, 1979, and November 13, 1979, hearings were held. The District Court denied Kelly's petition for a writ of habeas corpus and dismissed Mrs. Glasgow's petition for lack of jurisdiction. The District Court also determined that it would be in the best interests of the children that care, custody and control of the children be awarded to the grandmother and her husband.

Did the District Court lack jurisdiction to award custody to the grandmother without first terminating the natural father's parental rights?

Section 40-4-221, MCA, provides:

> "Determination of custody upon death of custodial parent. (1) Upon the death of a parent granted custody of a child, custody shall pass to the noncustodial parent unless one or more parties named in subsection (2) request a custody hearing. The noncustodial parent shall be a party in any proceeding brought under this section.
>
> "(2) Upon the death of a parent granted custody of a child, any of the following parties may request a custody hearing and seek custody of the child:
>
> "(a) the noncustodial natural parent;
>
> "(b) the surviving spouse of the deceased custodial parent;
>
> "(c) a person nominated by the will of the deceased custodial parent;
>
> "(d) any person nominated by the child if the child is at least 12 years old;
>
> "(e) any other person if that person has actual physical control over the child;
>
> "(f) any other party whom, upon showing of good cause, the court permits to intervene as an interested party.
>
> "(3) The hearing and determination of custody shall be governed by this part."

Under the terms of this statute, upon the death of Diane, the parent to whom custody was granted, custody "shall pass" to Kelly, the noncustodial parent, unless one of the parties named requests a custody hearing. Here, upon Diane's death, Mrs. Glasgow took the children to her home and refused to give the children to Kelly when he requested them notwithstanding the foregoing statutory provisions. Under the statute, Kelly properly could have retained custody of the children unless a custody hearing was requested. In addition, Kelly also could have requested a custody hearing. Kelly filed a petition for a writ of habeas corpus seeking custody of the children. The District Court treated this petition as a request for a custody hearing. Nearly twenty witnesses testified including Kelly, Mrs. Glasgow, the supervisor of the Yellowstone County Welfare Department, and a psychologist. Based upon several findings of fact, the District Court in conclusion of law III held "that it is in the best interests of the children to be placed in the care, custody and control of the maternal grandparents, namely, Waneta P. and James N. Glasgow."

Kelly argues that the District Court erred in applying the "best interests of the child" test in the instant case. He cites several cases which have held that the "best interest" test applies only to custody cases between two parents and that if a non-parent wants to acquire custody, he must proceed under far more stringent standards for intervention. Henderson v. Henderson (1977), 174 Mont. 1, 568 P.2d 177; In the Matter of Guardianship of Aschenbrenner (1979), ____ Mont. ____, 597 P.2d 1156, 36 St.Rep. 1282; In the Matter of Guardianship of Doney (1977), 174 Mont. 282, 570 P.2d 575.

Section 40-4-221, MCA, "Determination of custody upon death of custodial parent" was enacted by the 1979 Montana

-5-

legislature. Subsection (3) provides that "[t]he hearing and determination of custody shall be governed by this part." Title 40, ~~part~~ Chapter 4, includes section 40-4-212, MCA, which provides:

> "Best interest of child. The court shall determine custody in accordance with the best interest of the child. The court shall consider all relevant factors including:
>
> "(1) the wishes of the child's parent or parents as to his custody;
>
> "(2) the wishes of the child as to his custodian;
>
> "(3) the interaction and interrelationship of the child with his parent or parents, his siblings, and any other person who may significantly affect the child's best interest;
>
> "(4) the child's adjustment to his home, school, and community; and
>
> "(5) the mental and physical health of all individuals involved."

The findings of fact supported by the record, indicate that at the time of the hearing, it was in the best interests of the children to remain with their grandmother.

We hold that in custody hearings resulting after the death of the custodial parent as provided for in section 40-4-221, MCA, it is not error for the District Court to apply the "best interest of the child" test in determining custody between the natural father and the maternal grandmother.

Did the District Court err in dismissing the grandmother's petition for adoption because of lack of jurisdiction?

Sections 40-8-101, et seq., MCA, set forth the statutory procedures and requirements that must be observed in Montana in accompanying the valid adoption of children. Section 40-8-104, MCA (1979) (amended 1981), which was in effect at the time of the hearings, defined who may be adopted, and provided as follows:

"Who may be adopted. Any child present within this state at the time the petition for adoption is filed, irrespective of place of birth or place of residence, may be adopted."

Section 40-8-106, MCA, sets forth a description of those persons who are eligible to adopt and provides:

"Who may adopt. The following persons are eligible to adopt a child:

"(1)  a husband and wife jointly or either the husband or wife if the other spouse is the parent of the child;

"(2)  an unmarried person who is at least 18 years old;

"(3)  a married person at least 18 years old who is legally separated from the other spouse;

"(4)  in the case of an illegitimate child, its unmarried father or mother."

Section 40-8-111, MCA (1979) (amended 1981), deals with the subject of consent required in an adoption and is set forth, in part, as it provided at the time of the hearings:

"Consent required for adoption.  (1)  An adoption of a child may be decreed when there have been filed written consents to adoption executed by:

"(a)  both parents, if living, or the surviving parent of a child, provided that consent is not required from a father or mother:

"(i)  adjudged guilty by a court of competent jurisdiction of physical cruelty toward the child;

"(ii)  who has been judicially deprived of the custody of the child on account of cruelty or neglect toward the child;

"(iii)  who has, in the state of Montana or in any other state of the United States, willfully abandoned the child;

"(iv)  who has caused the child to be maintained by any public or private children's institution, charitable agency, or any licensed adoption agency or the department of social and rehabilitation services of the state of Montana for a period of 1 year without contributing to the support of the child during said period, if able;

-7-

"(v)  if it is proven to the satisfaction of the court that the father or mother, if able, has not contributed to the support of the child during a period of 1 year before the filing of a petition for adoption; or

"(vi)  whose parental rights have been judicially terminated;"

The findings of fact, conclusions of law and order which were entered by the District Court on December 13, 1979, state in pertinent part as follows:

"Findings of Fact

". . .

"VII.

"That between February, 1978, and October, 1979, the said BOYD KELLY BROST did not provide support to the minor children; that since June, 1978, said BOYD KELLY BROST has not provided support as provided by the Wyoming decree; and that when said BOYD KELLY BROST was working and capable of providing support, he failed to do so for one (1) year or more.

". . .

"X.

"That the said Waneta Diane Brost received Aid to Dependent Children for the minor children from the State of Wyoming and Montana during the period between December, 1977, and October, 1979; and that the records of the Yellowstone County Welfare Department do not indicate said BOYD KELLY BROST contributed to the support of the minor children.

". . .

"Conclusions of Law

". . .

"II.

"That the said Boyd Kelly Brost has failed to support the two minor children for a period of more than one year and has not met the minimum standards of parenthood and generally neglected said two minor children.

". . .

"VI.

-8-

> "That the Petition for adoption by Waneta P. Glasgow and James M. Glasgow be dismissed because in the Court's judgment there is no jurisdiction nor appropriate proceeding to consider same at this time."

Conclusion of law II finds that Kelly neglected the children. Section 40-8-111(1)(a)(ii), MCA (1979), provided that consent is not needed from a parent "who has been judicially deprived of the custody of the child on account of . . . neglect toward the child." In the Matter of the Guardianship of Doney (1977), 174 Mont. 282, 286, 570 P.2d 575, 577, this Court held that a determination of neglect should be made in a proceeding under section 10-1301, R.C.M. 1947 [now section 41-3-101, MCA], which requires a petition filed by a county attorney alleging neglect. The District Court's conclusion at the custody hearing that Kelly neglected his children is not sufficient to invoke section 40-8-111(1)(a)(ii), MCA (1979), excusing the need for Kelly's consent to adoption.

The District Court found that the children received aid from the Yellowstone County Welfare Department and that for the one year period prior to the filing of the petition, Kelly had failed to support the children during the periods he was working and capable of providing support. Mrs. Glasgow argues that either of these findings does away with the need for Kelly's consent to adoption under sections 40-8-111(1)(a)(iv) and (v), MCA (1979).

The Commissioners' Note for section 40-8-111, MCA annot., "Consent required for adoption," provides:

> "It is the theory of this act that the adoption proceedings should be based on consent. Only then can the adoption court devote its entire attention to the inquiry whether the adoptive home will serve the best interests of the child and whether the child is properly placed in the adoptive home.

-9-

"Under this theory controversies respecting the termination of parental rights should be settled in other proceedings in a court with jurisdiction of the parties before the adoption proceedings are brought. Once the parental rights are terminated the adoption court in the adoption proceedings has no other function in this respect except to recognize that the parental rights have been legally terminated by consent or by the order of a court of competent jurisdiction, followed by consent of a person, agency or court having authority to consent.

". . .

"The issues to be tried in a controversy over the termination of parental rights, ie., the degree of unfitness of a parent, are quite different than the inquiry properly before an adoption court. The two should not be mixed. The trial of controversial issues over parental rights should not cast an influence in the adoption proceedings where the sole inquiry should be the future best interests of the child."

The 1981 legislature's amendment to section 40-8-111, MCA, is consistent with the Commissioners' Note emphasizing separate proceedings. The current section 40-8-111, MCA, provides, in part:

"(1) An adoption of child may be decreed when there have been filed written consents to adoption executed by:

"(a) both parents, if living, or the surviving parent of a child, provided that consent is not required from a father or mother:

"(i) adjudged guilty by a court of competent jurisdiction of assault on the child, as provided in 45-5-201; endangering the welfare of children, concerning the child, as provided in 45-5-622; or sexual abuse of children, toward the child, as provided in 45-5-625;

"(ii) who has been judicially deprived of the custody of the child on account of cruelty or neglect toward the child;

"(iii) who has, in the state of Montana or in any other state of the United States, willfully abandoned the child, as defined in 41-3-102(3)(d);

"(iv) who has caused the child to be maintained by any public or private children's institution, charitable agency, or any licensed adoption

-10-

agency or the department of social and re-
habilitation services of the state of Montana
for a period of 1 year without contributing
to the support of the child during said period,
if able;

"(v)   if it is proven to the satisfaction of
the court that the father or mother, if able,
has not contributed to the support of the child
during a period of 1 year before the filing of
a petition for adoption; or

"(vi)   whose parental rights have been judicially
terminated;"

The statute now requires findings separate from the adoption

proceeding before excusing the consent requirement of the

parents.

This is also consistent with In the Matter of Adoption

of T.G.K. (1981), ____ Mont. ____, 630 P.2d 740, 38 St.Rep.

1030, where a stepfather attempted to adopt a child claiming

natural father's consent was not needed because the child

was maintained by a public or private children's institution.

Section 40-8-111 (1)(a)(iv), MCA.   The District Court dismissed

the adoption petition because the father's consent had not

been obtained.   In affirming the lower court, this Court

stated:   "If the appellant wishes to use this statutory

exception to consent, the petition should be drafted on that

basis and a specific hearing held thereon to determine its

applicability."   T.G.K., 630 P.2d at 743, 38 St.Rep. at

1033.   Mrs. Glasgow did not allege the welfare payments

received by the children as a grounds for excusing the

consent of Kelly's requirement.   There was no hearing to

determine if there were any grounds for excusing the consent

requirement prior to the hearing requesting the adoption.

It is the holding of this Court that the trial court's

dismissal of the petition for adoption "because in the

court's judgment there is no jurisdiction nor appropriate

proceeding to consider same at this time" was proper.   The

-11-

father had not given his consent nor had a specific hearing been held to determine if the consent requirement could be waived.

We affirm.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices