No. 95-243

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

IN RE A.R.A., a minor child.

PATRICK ERGER,

      Petitioner and Respondent,

  v.

WILLIAM D. ASKREN, JR.,

      Respondent and Appellant.

FILED

JUN 20 1996

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Robert W. Holmstrom, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Rodd A. Hamman (argued) and Robin A. Wolff,
Calton Hamman & Wolff, Billings, Montana

      For Respondent:

          Damon L. Gannett (argued), Gannett,
Anderson & Liechty, Billings, Montana

      For Amicus Curiae:

          Hon. Joseph P. Mazurek, Attorney General,
Patricia A. Jordan, Assistant Attorney
General (argued), Helena, Montana

Submitted: April 30, 1996

Decided: June 20, 1996

Filed:

_____
Clerk

Justice Charles E. Erdmann delivered the opinion of the Court.

This is an appeal from a decision of the Thirteenth Judicial District Court, Yellowstone County, awarding custody of A.R.A. to Patrick J. Erger. We reverse and remand to the District Court for proceedings consistent with this opinion.

We restate the issues as follows:

1. Did the District Court err in awarding custody of the child to a stepparent over a natural parent based on the best interest of the child test?

2. Did the District Court err in failing to set forth reasons for denial of attorney fees?

### FACTS

Tracy Erger and William (Bill) Askren were married in 1983. A.R.A. was born to them in 1987. Tracy and Bill divorced in 1989 when A.R.A. was nineteen months old. In the divorce decree, Tracy was awarded custody of A.R.A. and Bill was given reasonable rights of visitation. Bill was ordered to pay child support in the amount of $200 per month but became delinquent on those payments. Bill moved out of state and was not able to exercise his visitation rights to their full extent. He did, however, keep in touch by telephone and saw A.R.A. approximately once a year for extended periods.

Bill remarried in 1989 to Colleen. They had a daughter in 1990 and were expecting another child at the time of trial. Colleen's daughter from a previous marriage also lives with them.

2

Colleen works as a secretary for the Salt Lake County Sheriff's Department and Bill, while not employed, attends a junior college and is studying to become a paralegal.

Tracy married Patrick in 1990 and they had a son, Joshua, in February 1992. In September 1992, Patrick was transferred to Billings and Tracy, A.R.A., and Joshua moved shortly thereafter. Tracy was killed in an airplane crash on December 18, 1992. In her will, Tracy had named Patrick as A.R.A.'s guardian.

Bill, as the surviving natural parent, came to Billings to pick up A.R.A. Patrick refused to relinquish physical custody of A.R.A. to Bill and petitioned the court for custody pursuant to § 40-4-221, MCA. The District Court held a hearing on the matter and ordered that Patrick was the appropriate individual to have custody under the best interest of the child test even though he was not the natural father. From that order, Bill appeals.

ISSUE 1

Did the District Court err in awarding custody of the child to a stepparent over a natural parent based on the best interest of the child test?

Patrick requested a custody hearing pursuant to § 40-4-221, MCA. That section provides:

> (1) Upon the death of a parent granted custody of a child, custody shall pass to the noncustodial parent unless one or more parties named in subsection (2) request a custody hearing. The noncustodial parent shall be a party in any proceeding brought under this section.
> (2) Upon the death of a parent granted custody of a child, any of the following parties may request a custody hearing and seek custody of the child:

3

> (b) the surviving spouse of the deceased custodial
> parent;
> (c) a person nominated by the will of the deceased
> custodial parent;
>
> . . . .
> (3) The hearing and determination of custody shall
> be governed by this part.

According to part 2 of Title 40, Chapter 4, Montana Code Annotated, a court shall determine custody pursuant to the best interest of the child. Section 40-4-212, MCA. The factors relevant to the child's best interest include the following:

> (a) the wishes of the child's parent or parents as
> to custody;
> (b) the wishes of the child as to a custodian;
> (c) the interaction and interrelationship of the
> child with the child's parent or parents and siblings and
> with any other person who may significantly affect the
> child's best interest;
> (d) the child's adjustment to home, school, and
> community;
> (e) the mental and physical health of all
> individuals involved;
> (f) physical abuse or threat of physical abuse by
> one parent against the other parent or the child; and
> (g) chemical dependency, as defined in 53-24-103,
> or chemical abuse on the part of either parent.
>
> . . . .
> (4) The following are rebuttable presumptions:
> (a) A knowing failure to pay birth-related costs
> that the person is able to pay is not in the best
> interest of the child.
> (b) Failure to pay child support that the person is
> able to pay is not in the best interest of a child in
> need of the child support.

The District Court found that there was a close relationship between Patrick and A.R.A.; that A.R.A. was attached to her brother Joshua; that Patrick's parenting skills are superior to those possessed by Bill; that A.R.A. would be adversely affected by changing schools, therapists, and her primary residence; and that

4

it was in her best interest that she remain in Billings in the family unit to which she had grown accustomed. Based on these findings, the court determined that A.R.A.'s best interest warranted the award of her custody to Patrick.

Bill contends that the court's use of the best interest of the child test in awarding custody to a stepparent abrogates his constitutional right to parent his child. Patrick concedes that Bill has a constitutional right to parent his child but argues that A.R.A.'s fundamental liberty interest and right to privacy in the association with her family is also constitutionally protected. Patrick maintains that the District Court properly balanced the rights of both Bill and A.R.A. in using the best interest of the child test as directed by § 40-4-221, MCA.

The interpretation and application of a statute to a particular set of circumstances are matters of law. Denial of App. for Iss. of Beer/Wine Lic. (1994), 267 Mont. 298, 301, 883 P.2d 833, 835. We will therefore review the District Court's interpretation of § 40-4-221, MCA, for its correctness. See Babcock v. Wonnacott (1994), 268 Mont. 149, 151, 885 P.2d 522, 524.

The District Court interpreted § 40-4-221, MCA, as giving the court the authority to award custody to a stepparent rather than a surviving natural parent using the best interest of the child test. A statute is to be construed according to the plain meaning of its language. Norfolk Holdings v. Dept. of Revenue (1991), 249 Mont. 40, 43, 813 P.2d 460, 461. However, it is paramount that we give

such construction to the statute as will preserve the constitutional rights of the parties. LaFountaine v. State Farm Mut. Auto. Ins. (1985), 215 Mont. 402, 406-07, 698 P.2d 410, 413.

We recognized the constitutional rights of a natural parent to parent his or her child in In re Doney (1977), 174 Mont. 282, 570 P.2d 575.

> This careful protection of parental rights is not merely a matter of legislative grace, but is constitutionally required. *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). "* * * The integrity of the family unit has found protection in the Due Process Clause of the Fourteenth Amendment, *Meyer v. Nebraska*, supra [262 U.S. 390], at 399, [43 S.Ct. 625], 67 L.Ed. [1042], at 1045, the Equal Protection Clause of the Fourteenth Amendment, *Skinner v. Oklahoma*, supra [316 U.S. 535], at 541 [62 S.Ct. 1110], 86 L.Ed. [1655], at 1660, and the Ninth Amendment, *Griswold v. Connecticut*, 381 U.S. 479, 496, 85 S.Ct. 1678, 14 L.Ed.2d 510, 522 (1965) (Goldberg, J., concurring)." *Stanley*, 405 U.S. at 651, 92 S.Ct. at 1213, 31 L.Ed.2d at 559.

Doney, 570 P.2d at 577. In a line of cases following Doney, we again stressed the constitutional protection of a natural parent's right to the custody of his or her child. Babcock, 885 P.2d at 524; In re M.G.M. (1982), 201 Mont. 400, 406, 654 P.2d 994, 998; Pierce v. Pierce (1982), 198 Mont. 255, 260, 645 P.2d 1353, 1356; In re Aschenbrenner (1979), 182 Mont. 540, 544, 597 P.2d 1156, 1160. This constitutional protection is based upon the integrity of the family unit which necessarily includes the child's right to be with his or her natural parent. Stanley v. Illinois (1972), 405 U.S. 645, 652, 92 S. Ct. 1208, 1213, 31 L. Ed. 2d 551, 559.

Consequently, the state's ability to intrude upon the parent/child relationship must be guarded. Schultz v. Schultz (1979), 184 Mont. 245, 247, 602 P.2d 595, 596; Doney, 570 P.2d at 577. For that reason, "[a] finding of abuse, neglect, or dependency is the jurisdictional prerequisite for any court-ordered transfer of custody from a natural parent to a third party." Babcock, 885 P.2d at 524. Therefore, where a surviving parent does not voluntarily relinquish custody, the best interest of the child test can be used only after a showing of dependency or abuse and neglect by the natural parent. M.G.M., 654 P.2d at 998; Aschenbrenner, 597 P.2d at 1162.

Contrary to the above analysis, we have held that it was not error for a district court to apply the best interest of the child test rather than the dependency, abuse, and neglect test as set forth in Doney to determine custody between the natural father and the maternal grandmother. Brost v. Glasgow (1982), 200 Mont. 194, 199, 651 P.2d 32, 34. In Brost, we held that the 1979 Legislature, in § 40-4-221, MCA, changed the test to be used in determining custody when a custodial parent dies. Brost, 651 P.2d at 34. We again refused to require the stricter Doney standard in favor of the best interest of the child test in In re C.G. (1987), 228 Mont. 118, 740 P.2d 1139.

However, in Aschenbrenner and Henderson v. Henderson (1977), 174 Mont. 1, 568 P.2d 177, we held that the Uniform Marriage and Divorce Act (Title 40, Chapters 1 and 4) does not diminish the

7

constitutionally protected rights of a natural parent to the custody of his or her child. Aschenbrenner, 597 P.2d at 1163; Henderson, 568 P.2d at 181-82. It follows that an amendment to the Uniform Marriage and Divorce Act, however limited, cannot infringe upon those same rights. Therefore, the use of the best interest of the child test, as referred to in § 40-4-221, MCA, is improper in that any showing that a nonparent may be able to provide a better environment than can a natural parent is irrelevant to the question of custody between the two in view of the constitutional rights of a parent to custody. Babcock, 885 P.2d at 524; Aschenbrenner, 597 P.2d at 1162. Accordingly, § 40-4-221, MCA, is unconstitutional to the extent that it allows the granting of a § -221 petition prior to the termination of the natural parent's constitutional rights. We therefore overrule Brost and In re C.G. in their use of the best interest of the child test to award custody to a nonparent over a natural parent absent a finding of abuse and neglect or dependency.

While we recognize that § 40-4-221, MCA, gives a nonparent standing to request a custody hearing, that section does not give the district court authority to deprive a natural parent of his or her constitutionally protected rights absent a finding of abuse and neglect or dependency. Accordingly, we hold that the District Court erred in awarding custody of A.R.A. to Patrick based on the best interest of the child test in view of the fact there were no allegations of abuse and neglect or dependency on the part of Bill.

8

We therefore reverse the District Court and award custody of A.R.A. to Bill, the natural father.

## ISSUE 2

Did the District Court err in failing to set forth reasons for denial of attorney fees?

The District Court denied attorney fees to Bill but did not set forth reasons for the denial. A district court may award attorney fees pursuant to § 40-4-110, MCA. In the past, we have held that a district court must indicate in the findings of fact, conclusions of law, or order why attorney fees were not awarded. In re Marriage of Gallinger (1986), 221 Mont. 463, 471, 719 P.2d 777, 782 (citing Lewis v. Lewis (1982), 198 Mont. 51, 55, 643 P.2d 604, 606). We said that a court's failure to set forth specific findings constituted remandable error. Gallinger, 719 P.2d at 782.

However, we later considered that rule much too harsh to be applied on a general basis, and we held that a more appropriate standard of review for a decision not to award attorney fees is abuse of discretion. Gallinger, 719 P.2d at 783. In the present case, the record indicates that the District Court was informed of both parties' financial resources as required by § 40-4-110, MCA. Based on that information, the District Court determined that the parties would pay their own attorney fees. That information has not changed. Notwithstanding the fact that we are granting custody of A.R.A. to Bill, we determine the District Court did not abuse

9

its discretion in directing the parties to pay their own attorney fees.

Reversed in part and affirmed in part.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

Justice James C. Nelson specially concurs.

I concur in our opinion on both issues 1 and 2. I write separately because I believe that several points not addressed in our opinion deserve mention.

First, it is only fair to point out that both Henderson v. Henderson (1977), 174 Mont. 1, 568 P.2d 177, and Matter of Guardianship of Doney (1977), 174 Mont. 282, 570 P.2d 575, were decided prior to the enactment of § 40-4-221, MCA, in 1979. Accordingly, the constitutional principles enunciated in those cases and relied upon here were neither considered nor addressed in the context of this statute.

Second, Brost v. Glasgow (1982), 200 Mont. 194, 651 P.2d 32, and Matter of Paternity of C.G. (1987), 228 Mont. 118, 740 P.2d 1139, were decided strictly on the basis of § 40-4-221, MCA. While in both cases we mentioned Doney, in neither Brost nor C.G. did we address the constitutionality of the best interest test mandated by this statute in light of our prior adoption of the principles enunciated in Stanley v. Illinois (1972), 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551. Having now done that, Brost and C.G. are correctly overruled.

Third, notwithstanding that we have overruled Brost and C.G. we have not discussed nor attempted to deal with other cases, which remain good law, wherein we have permitted persons other than biological parents to seek or obtain custody of a child to the exclusion of a natural parent without prior termination of the natural parent's rights. I make no pretention that this list is

11

all-inclusive, but see, for example: In re Custody of R.R.K. (1993), 260 Mont. 191, 859 P.2d 998 (grandparents entitled to seek custody of child under § 40-4-211, MCA; § 40-4-212 controls); In re Marriage of K.E.V. (1994), 267 Mont. 323, 883 P.2d 1246 (child awarded to non-biological father on the basis of equitable estoppel; neither natural mother's nor natural father's rights terminated); and Matter of Paternity of Adam (1995), 273 Mont. 351, 903 P.2d 207 (non-biological father allowed to adopt the child over objection of natural father on basis of presumption of paternity under Montana's Uniform Parentage Act, Title 40, Chapter 6, MCA; best interest test controls).

I mention these cases here only from the standpoint that in the instant case we properly have grounded our decision in the fundamental constitutional rights implicit in the biological parent/child relationship and have rejected a statutory scheme that permits the invasion of that relationship absent there first being proof or demonstration of the loss, forfeiture or termination of those rights. The cases referred to in the preceding paragraph were decided under different statutory schemes, and/or on different factual scenarios and without the constitutional question at issue here. Hence, while, arguably, it is not proper that we discuss or analyze these and similar decisions here, nevertheless, it begs the question whether such decisions remain viable in the face of other statutory schemes or legal theories that, like § 40-4-221, MCA, permit custody to be awarded to a person other than a biological parent absent the rights of the natural parent(s) being first

12

terminated or otherwise forfeited. Obviously, those skirmishes remain to be fought on future battlefields. Given our decision here, however, this may be an area of statutory law that should be addressed and clarified by the legislature.

Finally, it seems to me that the approach we have articulated in the instant case is as follows:

    1.    Section 40-4-221, MCA, and, by implication, other statutes that allow persons other than biological parents to seek custody of a child to the exclusion of a natural parent, do no more than provide a basis for standing to file a custody petition, assuming that the petitioner meets the statutory criteria specified.

    2.    In order for such a person to prevail on his or her petition, however, the petitioner must prove that:

    (a) the rights of the natural parent(s) have been lost via:

    (i)    termination for abuse, dependency or neglect (Title 41, Chapter 3, MCA);[1] or

    (ii) death of both natural parents or the surviving natural parent (§ 40-4-221, MCA); or

    (iii)    some other statutory basis or procedure on which parental rights have been forfeited, relinquished, abandoned or terminated or have otherwise ceased to exist; *and*

    (b)    the best interest of the child will be served by granting the petition.

If the petitioner does not prove or demonstrate one of the subparagraphs under 2(a) above, then the court will not reach 2(b)

---

    [1]    I note that our statutory and case law provide that petitions alleging abuse and neglect must be brought by the county attorney, the attorney general, or an attorney hired by Department of Health and Public Services with the consent of either of those two officials. Section 41-3-401(1), MCA; Pierce v. Pierce (1982), 198 Mont. 255, 261, 645 P.2d 1353, 1357; Babcock v. Wonnacott (1994), 268 Mont. 149, 154, 885 P.2d 522, 525.

13

(best interest of the child). If 2(a) is proven or demonstrated, but 2(b) is not, then the petition will still be denied. In this case, 2(a) has not been proven or demonstrated and, accordingly, Bill is entitled to custody of his daughter.

_____
                                                    Justice

Justice Karla M. Gray joins in the foregoing special concurrence.

_____
                                                    Justice

14