

DA 10-0470

IN THE SUPREME COURT OF THE STATE OF MONTANA

2011 MT 50

IN RE THE PARENTING OF A.P.P.,

a minor child.

GERALD GRICE and ANGELINA MYERS,

Petitioners and Appellees,

v.

BRIAN WILLIAM PRICE,

Respondent and Appellant.

APPEAL FROM: District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DR-10-0791
Honorable Russell C. Fagg, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Patrick C. Sweeney, Attorney at Law, Billings, Montana

For Appellee:

Paul C. Collins, Gary M. Connelley, Tyler T. Norwood, Crowley
Fleck, PLLP, Billings, Montana

Submitted on Briefs: February 16, 2011

Decided: March 22, 2011

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1    Brian Price is the biological father of a minor child, A.P.P.  A.P.P.'s mother, Judith Grice, is deceased.  Brian appeals the Thirteenth Judicial District Court's ruling granting a parental interest to A.P.P.'s step-father, Gerald Grice, and visitation rights to A.P.P.'s adult half-sister, Angelina Myers.  We affirm.

## ISSUE

¶2    The dispositive issue on appeal is:

¶3    Did the District Court abuse its discretion in finding that Gerald was entitled to parenting rights and Angelina was entitled to visitation rights with A.P.P.?

## FACTUAL AND PROCEDURAL BACKGROUND

¶4    Brian and Judith began dating in 1998.  At that time, Judith had two children from a previous marriage, Angelina, born 1991, and J.M., born 1993.  Judith gave birth to A.P.P. in late 2000.  Brian and Judith subsequently married in May 2003 and divorced in January 2007.  After the divorce, Judith had primary custody of all three children and Brian had visitation rights with A.P.P. and child support obligations for her.

¶5    Gerald Grice and Judith began dating in August 2008 and Gerald moved in with Judith and the children in October 2008.  Gerald and Judith married in July 2009.  Two months after their marriage, Judith was killed in a motorcycle accident.  Presuming that Brian had heard about Judith's death through the news or mutual friends of Brian and Judith, neither Gerald nor the children contacted him.  All three children remained with Gerald.  However, on November 6, 2009, having just learned of Judith's death, Brian demanded the return of A.P.P. from Gerald.  Gerald took A.P.P. to Brian who, in March

2

2010, moved out of state with her, subsequently proclaiming he did so to keep Gerald and Angelina from being able to see her.

¶6      In July 2010, Gerald and Angelina petitioned for a determination of parental interest and visitation rights.  After a hearing, the District Court concluded that (1) Brian had engaged in conduct that was contrary to his child-parent relationship with A.P.P.; (2) Gerald had established a child-parent relationship with A.P.P.; and (3) it was in A.P.P.'s best interests to continue her relationship with her step-father and sister.  The District Court granted to Gerald and Angelina parenting/visitation time with A.P.P.  Brian appeals.

## STANDARD OF REVIEW

¶7      We review a district court's interpretation and application of statutes for correctness.  We review a district court's findings of fact to determine whether the findings are clearly erroneous.  We will affirm the district court's decision when substantial credible evidence supports the findings, unless there has been a clear abuse of discretion.  We view the evidence in the light most favorable to the prevailing party.  Additionally, the trial court determines the credibility of witnesses and the weight assigned to their respective testimony.  We do not consider whether evidence supports findings that are different from those made by the district court.  We confine our review to the determination of whether substantial credible evidence supports the findings actually made by the district court.  *Kulstad v. Maniaci*, 2009 MT 326 ¶¶ 50-52, 352 Mont. 513, 220 P.3d 595 (internal citations and paragraph breaks omitted).

## DISCUSSION

¶8     *Did the District Court abuse its discretion in finding that Gerald was entitled to parenting rights and Angelina was entitled to visitation rights with A.P.P.?*

¶9     Section 40-4-228, MCA, governs the award of a child-parent interest and visitation rights to a third-party nonparent.  Under this statute, a court may award a parental interest to a person other than a natural parent when it is shown by clear and convincing evidence that (1) the natural parent has engaged in conduct that is contrary to the child-parent relationship; (2) the nonparent has established a child-parent relationship; and (3) it is in the best interest of the child to continue that nonparent relationship. Section 40-4-228(2), MCA.  A court may award visitation rights to a third-party nonparent based upon the best interests of the child.  Section 40-4-228(3), MCA.

¶10    First, we address Gerald's petition for a determination of a parental interest.  The District Court found that Brian engaged in conduct contrary to his parental relationship with A.P.P.  It noted that prior to Judith's death, Brian had missed significant numbers of visits with A.P.P. to which he was entitled under the divorce and custody agreement. Weeks and months passed without Brian seeing A.P.P., despite his having regular visitation rights every other weekend as well as specific holidays and summer time visitation.  The court also found that Brian failed to make all of the child support payments he was obligated to make.  According to the District Court, these findings constituted evidence that Brian engaged in conduct contrary to the child-parent relationship.

¶11    The record contains sufficient evidence to support these findings.  It is undisputed that Brian missed many visitation opportunities.  In fact, Brian acknowledged

4

missing numerous visitations but claimed these absences were primarily caused by Judith. Angelina and Gerald disputed that Judith kept A.P.P. from seeing her father. As we have repeatedly held, when presented with conflicting evidence it is the district court's role to weigh and resolve such conflicts and to judge the credibility of witnesses. *State v. Hurlbert*, 2009 MT 221, ¶ 40, 351 Mont. 316, 211 P.3d 869 (citations omitted). To the extent the District Court relied on this evidence or weighed it in favor of Gerald and Angelina, we neither reweigh it nor disturb it.

¶12 The court also found, based upon a document from the Montana Department of Health and Human Services Child Support Enforcement Division, that Brian had paid only 25-30% of the child support he owed for A.P.P. Again, while Brian disputed this, the District Court had sufficient evidence to reach this finding.

¶13 Relying on *In re A.R.A.*, 277 Mont. 66, 919 P.2d 388 (1996) and *Girard v. Williams,* 291 Mont. 49, 966 P.2d 1155 (1997), both cases superseded by statute as stated in *Kulstad*, Brian argues that missed visitations and unpaid child support are insufficient reasons to "change custody from a natural part [sic] to a step parent prior to the enactment of M.C.A. § 40-4-228." Brian opines that "[i]n both of those cases the fundamental constitutional right to parent outweighed the deficient conduct." Presumably, though not expressly, Brian submits that his failure to pay full child support and meet all visitation opportunities does not constitute "conduct that is contrary to the child-parent relationship" and is insufficient reason to give Gerald and Angelina parenting and visitation rights under § 40-4-228, MCA.

¶14    We find the two cases relied upon by Brian to be distinguishable on multiple grounds. In *A.R.A.*, the natural parents of A.R.A. divorced and remarried other people. Subsequently, A.R.A.'s custodial parent, her biological mother, died. A.R.A.'s natural father sought custody of her as did A.R.A.'s step-father under § 40-4-221, MCA (1995), entitled "Determination of custody upon death of custodial parent." The district court, applying § 40-4-212, MCA (1996), found that it was in A.R.A.'s best interests to continue living with her step-father and her half-brother with whom she had developed close relationships. *A.R.A.*, 277 Mont. at 68, 919 P.2d at 390-91. A.R.A.'s natural father appealed, asserting that the court's use of the "best interests" test abrogated his constitutional right to parent his child. *A.R.A.*, 277 Mont. at 70, 919 P.2d at 391.

¶15    Despite the natural father being behind on child support payments and missing many visitation opportunities, we ruled A.R.A.'s natural father had a constitutional right to raise her and that this right could not be infringed based solely on a "best interests of the child" analysis. We determined that § 40-4-221, MCA (1995), was unconstitutional "to the extent that it allows the granting of a § -221 petition prior to the termination of the natural parent's constitutional rights." *A.R.A.*, 277 Mont. at 72, 919 P.2d at 392. Therefore, we held, as we had in previous cases, "the [d]istrict [c]ourt erred in awarding custody of A.R.A. to [step-father] based on the best interest of the child test in view of the fact there were no allegations of abuse and neglect or dependency on the part of [natural father]." *A.R.A.*, 277 Mont. at 72, 919 P.2d at 392.

¶16    While this case is somewhat factually similar to the case at bar, it is legally distinguishable. First, the cases require application and interpretation of different statutes

6

from different years. *A.R.A*. dealt with the 1995 versions of §§ 40-4-212 and -221, MCA. The case currently before us focuses on the requirements of § 40-4-228, MCA, enacted in 1999 to address parenting and visitation matters between a natural parent and a third party. Additionally, unlike in *A.R.A.*, we are not here addressing the constitutionality of a statute. Section 40-4-228, MCA, has been declared constitutional under *Kulstad* and *In re the Parenting of L.F.A*., 2009 MT 363, 353 Mont. 220, 220 P.3d 391. Furthermore, and significantly, Gerald is *not* seeking exclusive custody of A.P.P.; therefore, Brian's constitutional right to parent A.P.P. is not threatened with termination. *A.R.A.* is therefore inapposite.

¶17 *Girard* is also distinguishable on facts, issues and law. In *Girard*, we addressed the legal issue of whether nonparents had standing to seek permanent and full custody over two children when the natural father was also seeking permanent and full custody. We concluded that without a showing that the natural parent had voluntarily relinquished his rights to custody of his children under § 40-4-211(4)(b), MCA, (1997), the nonparents did not have standing. Given the wholly different legal focus, *Girard* is not helpful authority for Brian.

¶18 Applying the requisites of § 40-4-228, MCA, we will not disturb the District Court's finding that Brian engaged in conduct that was contrary to his parental relationship with A.P.P. as it is supported by substantial credible evidence and is not a clear abuse of discretion.

¶19 In addition to finding that Brian had acted in a manner contrary to a child-parent relationship, the court also found that Gerald had established a child-parent relationship

with A.P.P. as defined in § 40-4-211, MCA—a finding that is required by § 40-4-228(2)(b), MCA. Section 40-4-211(6), MCA, states that a "child-parent relationship" between a child and a nonparent "means a relationship that":

> (a) exists or did exist, in whole or in part, preceding the filing of an action under this section, in which a person provides or provided for the physical needs of a child by supplying food, shelter, and clothing and provides or provided the child with necessary care, education, and discipline;
> (b) continues or existed on a day-to-day basis through interaction, companionship, interplay, and mutuality that fulfill the child's psychological needs for a parent as well as the child's physical needs; and
> (c) meets or met the child's need for continuity of care by providing permanency or stability in residence, schooling, and activities outside of the home.

¶20 Undisputed evidence was presented to the District Court that Gerald financially supported A.P.P., regularly helped her with her homework, attended her sporting events and school activities, provided transportation to school and other places, prepared meals for her, and took care of her while her mother worked. Based on this evidence, we conclude the District Court did not err in finding that Gerald had established a child-parent relationship with A.P.P.

¶21 Brian also challenges the District Court's granting of visitation rights to Angelina without an express finding of the existence of a child-parent relationship between Angelina and A.P.P. We note, however, that Angelina sought only visitation rights, not parenting rights. Nothing in § 40-4-228, MCA, which addresses both parental interests and visitation rights, requires a third party seeking only visitation rights to first demonstrate the existence of a child-parent relationship. In fact, § 40-4-228(3), MCA, provides that visitation rights may be ordered "based on the best interests of the child."

8

¶22     The court was presented throughout this proceeding with written and oral testimony of Angelina's close relationship with her younger sister and how Angelina bore much of the responsibility for young A.P.P. when Brian and Judith were together or when Judith was at work. The record reflects that Angelina continued in this strong care-giving role after Brian and Judith divorced, when taking care of the younger children while Judith was working. She testified that it was only when Gerald joined their family and developed a father-like relationship with A.P.P., that she was relieved of some of the earlier responsibilities for A.P.P. The evidence establishes that Angelina nonetheless continued to maintain a close relationship with A.P.P. to their mutual benefit, and seeks to continue that relationship as the two sisters grow older.

¶23     After hearing testimony from all the parties except A.P.P., the District Court determined that it was in A.P.P.'s best interests to maintain her relationships with Gerald and Angelina while residing with her father. The court ruled that Gerald was entitled to parental rights and visitation and that Angelina was entitled to visitation. The evidence in this case supports the District Court's findings and, as such, the findings are not clearly erroneous, nor did the court abuse its discretion in reaching its conclusions based upon those findings. Moreover, the District Court's application and interpretation of the applicable statutes was not incorrect.

## CONCLUSION

¶24     For the foregoing reasons, we affirm the judgment of the District Court.

/S/ PATRICIA COTTER

9

We concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ JAMES C. NELSON
/S/ MICHAEL E WHEAT